**THE CITY OF GALVESTON, Texas and Landry's Restaurants, Inc., Appellants,**

v.

**The TEXAS GENERAL LAND OFFICE, Appellee.**

No. 01–04–01096–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 20, 2006.

Barbara Elliott–Roberts, Kevin D. Jewell, Chamberlain, Hrdlicka, White, Williams, & Martin, P.C., Houston, for Appellant.

Jeffee L. Martinez–Vargas, Austin, TX, for Appellee.

Panel consists of Justices TAFT, HIGLEY, and BLAND.

## OPINION

JANE BLAND, Justice.

This declaratory judgment action requires us to construe Texas Local Govern-

ment Code section 307.042(e),[1] which enabled the City of Galveston ("the City") to sell the Flagship Pier and Hotel—property the Legislature requires be used for public park purposes—to Landry's Restaurants, Inc. ("Landry's"). The City and Landry's contend the trial court erred in interpreting the statute to allow the General Land Office ("GLO") to assess an annual lease payment for Landry's use of the State-owned submerged land beneath the pier and hotel. We agree with the trial court's determination and therefore affirm.

## Background

In 1941, the Legislature granted to any coastal city with a population over 60,000 the right to use and occupy, for public park purposes, the State-owned tidelands, water, and bed of the Gulf of Mexico ("State-owned submerged land"). *See* Act of Feb. 11, 1941, 47th Leg., R.S., ch. 7, 1941 Tex. Gen. Laws 10, 11 (amended 2001) (current version at TEX. LOC. GOV'T CODE ANN. § 307.001 (Vernon 2005)). The statute gave eligible cities the right to erect a pier over the State-owned submerged land, and further delineated the types of facilities that the Legislature deemed suitable to build on the pier: a theatre, restaurant, convention hall, dance hall, aquarium, fishing platform, exhibition hall, stadium for aquatic sports, spaces and platforms for concessions, walkways, toilet facilities, and resting facilities for the comfort of the public. *See* Act of Feb. 11, 1941, 47th Leg., R.S., ch. 7, 1941 Tex. Gen. Laws 10, 12, *amended by* Act of May 24, 1961, 57th Leg., R.S., ch. 525, 1961 Tex. Gen. Laws 1166, 1167, *amended by* Act of Apr. 30, 1987, 70th Leg., R.S., ch. 149, 1987 Tex. Gen. Laws 707, 1091–92. The statute authorized eligible cities to borrow money, issue negotiable bonds, and levy taxes to defray the costs both of building the pier

and acquiring any privately owned land to be used in connection with the pier. *See* Act of Feb. 11, 1941, 47th Leg., R.S., ch. 7, 1941 Tex. Gen. Laws 10, 12 (amended 1987) (current version at TEX. LOC. GOV'T CODE ANN. § 307.041(a) (Vernon 2005)). As security for any bonds issued, the statute enabled eligible cities to mortgage the pier and any improvements thereon, and under the terms of any such mortgage, to grant to the purchaser under sale or foreclosure a franchise to operate the properties purchased for a 35–year period. *See* Act of Feb. 11, 1941, 47th Leg., R.S., ch. 7, 1941 Tex. Gen. Laws 10, 13, *amended by* Act of May 20, 1965, 59th Leg., R.S., ch. 671, 1965 Tex. Gen. Laws 1534, 1534, *amended by* Act of May 11, 2001, 77th Leg., R.S., ch. 598, 2001 Tex. Gen. Laws 1139, 1140. In 1942, pursuant to this statute, the City constructed a pier commonly known as the Flagship Pier.

In 1961, the Legislature amended the statute by including, among other things, authorization to build a hotel on the pier with bond funds. *See* Act of May 24, 1961, 57th Leg., R.S., ch. 525, 1961 Tex. Gen. Laws 1166, 1167 (amended 1987) (current version at TEX. LOC. GOV'T CODE ANN. § 307.021 (Vernon 2005)). Four years later, the Legislature amended the statute again to extend the permissible franchise period pursuant to a foreclosure sale from thirty-five years to seventy-five years. *See* Act of May 20, 1965, 59th Leg., R.S., ch. 671, 1965 Tex. Gen. Laws 1534, 1534 (amended 2001) (current version at TEX. LOC. GOV'T CODE ANN. § 307.042(c) (Vernon 2005)). The City used bond proceeds to build the Flagship Hotel on the pier. Eventually, the City retired the bonds it had issued for constructing the hotel and pier.

---

1. *See* TEX. LOC. GOV'T CODE ANN. § 307.042(e) (Vernon 2005).

In September 2000, the Galveston City Council adopted a resolution asking the Legislature to amend the statute to enable the City to sell the Flagship Pier and Hotel (together the "Flagship Property"). Galveston, Tex., City Council Resolution 00–045 (Sept. 14, 2000). In 2001, the Legislature amended section 307.042 of the statute to add the following provision:

> The municipality may sell the [Flagship Property] if no bonded indebtedness remains outstanding. If the municipality sells the property, the General Land Office may grant to the purchaser a lease of the state-owned tideland, water, and bed beneath the property or, if necessary, a larger area for a period of not more than 99 years after the purchase. The purchaser and the purchaser's heirs, successors, and assigns have the same right of use and occupancy to the state-owned tideland, water, and bed as is granted to the municipality under this chapter. On termination of that period or on cessation of use of the property for that purpose, the right of use and occupancy reverts to the municipality.

Act of May 11, 2001, 77th Leg., R.S., ch. 598, 2001 Tex. Gen. Laws 1139, 1140 (codified at TEX. LOC. GOV'T CODE ANN. § 307.042(e) (Vernon 2005)).

The City subsequently sold the Flagship Property to Landry's. Following the sale, the GLO sought to enter into a lease with Landry's for the State-owned submerged land beneath the Flagship Property. Landry's and the City (together "appellants") responded by suing for a declaratory judgment,[2] alleging that the statute precludes the GLO from assessing an annual rental payment against Landry's because the City had never paid rent to the GLO for its use and occupancy of the State-owned submerged land. After considering the parties' cross-motions for summary judgment, the trial court granted the GLO's motion and denied appellants' motion. This appeal followed.

## Standard of Review

We review declaratory judgments under the same standards as other judgments and decrees. TEX. CIV. PRAC. & REM.CODE ANN. § 37.010 (Vernon 1997); *City of Galveston v. Giles*, 902 S.W.2d 167, 170 (Tex.App.-Houston [1st Dist.] 1995, no writ). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *Giles*, 902 S.W.2d at 170. Here, because the trial court resolved the case on competing motions for summary judgment, we review the propriety of the declaratory judgment under the same standards that we apply in reviewing a summary judgment. *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.).

Our review of a summary judgment is de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Under the traditional standard for summary judgment, the movant has the burden to show that no genuine issue of material fact exists and that judgment should be granted as a matter of law. TEX.R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). We view all evidence in a light favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Provident Life*, 128 S.W.3d at 215. When both sides move for summary judgment and the

---

**2.** *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 37.001–.011 (Vernon 1997 & Supp.2005) (Uniform Declaratory Judgments Act).

trial court grants one motion and denies the other, we consider both motions, their evidence, and their issues, and we may render the judgment that the trial court should have rendered. *See CU Lloyd's of Tex. v. Feldman,* 977 S.W.2d 568, 569 (Tex. 1998).

### Analysis

Statutory interpretation is a question of law. *In re Canales,* 52 S.W.3d 698, 701 (Tex.2001). Our primary goal in interpreting a statute is to ascertain and to effectuate the Legislature's intent. *Id.* at 702. In doing so, we begin with the statute's plain language. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999). We begin with the plain language because we assume that the Legislature tried to say what it meant; therefore, the statute's words should be the surest guide to the Legislature's intent. *Fitzgerald,* 996 S.W.2d at 866.

In ascertaining legislative intent, we do not confine our review to isolated statutory words, phrases, or clauses; rather, we examine the entire act. *Meritor Auto., Inc. v. Ruan Leasing Co.,* 44 S.W.3d 86, 90 (Tex.2001); *see also* Tex. Gov't Code Ann. § 311.011(a) (Vernon 2005) (instructing courts to read words and phrases in context). We construe words and phrases according to the rules of grammar and common usage. Tex. Gov't Code Ann. § 311.011(a). Moreover, words and phrases that have acquired a technical or particular meaning must be construed accordingly. *Id.* § 311.011(b).

The Code Construction Act lists factors that may be considered in construing a statute, whether or not the statute is ambiguous on its face. *Id.* § 311.023. These factors include, among other things, (1) the statute's objectives, (2) the circumstances under which the statute was enacted, (3) the statute's legislative history, (4) former statutory provisions, and (5) the consequences of a particular construction. *Id.* § 311.023(1)-(7). We presume that the Legislature intended a just and reasonable result. *Id.* § 311.021(3).

*The Statute*

Local Government Code section 307.042(e) provides as follows:

> The municipality may sell the property described by Subsection (b)[3] if no bonded indebtedness remains outstanding.[4] *If the municipality sells the property, the General Land Office may grant to the purchaser a lease of the state-owned tideland, water, and bed beneath the property or, if necessary, a larger area for a period of not more than 99 years after the purchase. The purchaser and the purchaser's heirs, successors, and assigns have the same right of use and occupancy to the state-owned tideland, water, and bed as is granted to the municipality under this chapter.* On termination of that period or on cessation of use of the property for that purpose, the right of use and occupancy reverts to the municipality.

Tex. Loc. Gov't Code Ann. § 307.042(e) (emphasis added).

■ Appellants rely on the portion of the statute that states "[t]he purchaser ... ha[s] the same right of use and occupancy to the state-owned tideland, water, and bed as is granted to the municipality under this chapter." *Id.* Appellants urge that this statutory provision allows Landry's to

---

3. Subsection (b) of the statute describes the Flagship Property. *See* Tex. Loc. Gov't Code Ann. § 307.042(b) (Vernon 2005).

4. The parties agree that no bonded indebtedness remains outstanding.

use and occupy the State-owned sub-merged land beneath the pier without pay-ing rent to the GLO because the GLO did not charge the City rent for more than fifty years, and the statute gives the Flag-ship purchaser "the same right of use and occupancy" as the City.

*Plain Language and Legislative History*

Appellants' contention that the phrase "the same right of use and occupancy" as the City imposes *rent-free* "use and occu-pancy" of the State-owned submerged land is not supported by either the plain lan-guage or the legislative history of section 307.042(e), when read together with the remainder of the statutory provision. The amended statute prefaces the right of oc-cupancy description with the correspond-ing phrase that the GLO "may grant to the purchaser a lease" of the State-owned sub-merged land for a term not to exceed ninety-nine years, a provision not found in the earlier version of the statute. *Id.* The amended statute thus contemplates that the GLO may require consideration, name-ly rent, in exchange for "the same right of use and occupancy." *See* BLACK'S LAW DIC-TIONARY 898 (7th ed.1999) (defining "lease" as "[a] contract by which a rightful posses-sor of real property conveys the right to use and occupy that property in exchange for consideration, usu. rent"). The City never had any lease arrangement with the GLO, but the amendment authorizes one. Moreover, the statute does not *require* the GLO to grant a lease; rather, the GLO "may grant" it, conferring the latitude to the GLO to negotiate a bargained-for agreement. TEX. LOC. GOV'T CODE ANN. § 307.042(e).

Similarly, the legislative history does not indicate that the Legislature intended for the Flagship purchaser to enjoy rent-free use of the State-owned submerged land beneath the pier. Specifically, the bill analysis prepared by the House Research Organization—the only legislative history for section 307.042(e)—states as follows:

**HOUSE RESEARCH ORGANIZATION DAILY FLOOR REPORT**

Allowing a 99–year lease for the Flag-ship Hotel in Galveston

. . . .

In 1965, the 59th Legislature granted the City of Galveston a 75–year lease for the state-owned submerged land under the city pier that extends out into the Gulf of Mexico.[5] The city issued bonds and sold them to a developer, who built the Flagship Hotel. The bonds were retired in 25 years. The City owns the hotel. The authority for the project is contained in Local Government Code, ch. 307, which applies only to the Flag-ship Hotel in the City of Galveston, based on the description of the land and other features.

. . . .

SB 673 is needed to support the city of Galveston in its sale of this historic coastal property. The Flagship Hotel in Galveston is in need of serious repairs and improvements, and the city would like to sell the property to a developer for redevelopment. Developers have

---

5. The bill analysis misstates that the 59th Leg-islature granted a 75–year lease to the City. Rather, as we previously explained, the 1965 statute provided that, as additional security for any bonds issued by the City and secured by a mortgage of the pier, the City was al-lowed to "grant to the purchaser under sale or foreclosure thereunder a franchise to oper- ate the properties purchased for a period of not over seventy-five (75) years after the pur-chase thereof." Act of May 20, 1965, 59th Leg., R.S., ch. 671, 1965 Tex. Gen. Laws 1534, 1534 (amended 2001) (current version at TEX. LOC. GOV'T CODE ANN. § 307.042(c) (Ver-non 2005)).

been uninterested, however, in buying the hotel and investing the money for these improvements when they would have only 34 years of the original 75–year lease to recoup their investment. SB 673 would allow the GLO to grant a 99–year lease to a developer to make this sale possible. The GLO would not be required to grant the lease. If granted, the state would benefit from the *continued annual lease payments,* and the city would benefit from the investment.

HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. S.B. 673, 77th Leg., R.S. 51–52 (2001) (emphasis added). Of course, the City had not been making annual lease payments to the GLO, and the bill analysis is therefore mistaken in its assertion that the State would benefit from *continued* annual lease payments. Importantly, however, instead of indicating that the Flagship purchaser would enjoy rent-free use of the State-owned submerged land, the bill analysis contemplates a lease in exchange for the purchaser's right to use and occupy the State-owned submerged land. Hence, appellants' assertion that Landry's is entitled to rent-free use and occupancy is not borne out by the legislative history of the statute.

Appellants further contend the city council resolution that prompted the Legislature to enact section 307.042(e) supports their position. The resolution states as follows:

The City Council of the City of Galveston, Texas, hereby respectfully requests the Texas Legislature to amend Chapter 307 of the Texas Local Government Code to re-establish the easement to the submerged land underlying the pier for a 99 year period in order to facilitate the City's ability to sell the Flagship pier and hotel in order for it to be improved and enhanced as a major tourist attrac-

tion and to provide a potential purchaser with the ability to substantially improve the property for its appropriate long term use.

Galveston, Tex., City Council Resolution 00–045 (Sept. 14, 2000). Appellants maintain that continued rent-free use of the State-owned submerged land was a necessary incentive to attract buyers who would be willing to pay for substantial improvements to the Flagship Property.

The bill analysis, however, clarifies that potential developers were uninterested in buying the Flagship hotel and thereafter investing substantial sums to improve the property "when they would have only 34 years of the original 75–year lease to recoup their investment." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. S.B. 673, 77th Leg., R.S. 52 (2001). It therefore appears that the impetus behind the legislation was to enable the GLO to grant the Flagship purchaser a *99–year* lease, thereby alleviating the problem by giving the purchaser an additional sixty-five years to recoup its investment. In other words, the legislative history is concerned not with whether a potential buyer would be unwilling to pay for improvements to the fixtures because it might also have to pay rent for the land beneath, but rather whether a potential buyer would be unwilling to pay for improvements to the fixtures because the buyer would have only a short time to recoup its investment before its right of occupancy lapsed. This emphasis on lease *length,* as opposed to lease *payments,* is reflected in the subject line of the bill analysis ("[a]llowing a 99–year lease for the Flagship Hotel in Galveston"), in the text of the bill analysis as previously discussed, and in the city council resolution on which appellants rely. HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. S.B. 673, 77th Leg., R.S. 51–52 (2001); Galveston, Tex., City Council Resolution 00–045 (Sept. 14, 2000). The resolution does not men-

tion rent-free use of the State-owned submerged land, but rather asks the Legislature "to re-establish the easement ... *for a 99 year period* in order to facilitate the City's ability to sell the Flagship pier and hotel in order for it to be improved and enhanced as a major tourist attraction *and to provide a potential purchaser with the ability to substantially improve the property for its appropriate long term use.*" Galveston, Tex., City Council Resolution 00–045 (Sept. 14, 2000) (emphasis added).

*Harmonizing the Statutory Provisions*

The two statutory provisions at issue in this case may easily be harmonized. *See Black v. Am. Bankers Ins. Co.,* 478 S.W.2d 434, 437 (Tex.1972) ("It is a cardinal rule of statutory construction that all sections, words and phrases of an entire act must be considered together; every provision should be construed with every other portion to produce a harmonious whole; and one provision will not be given a meaning out of harmony or inconsistent with other provisions, although it might be susceptible of such construction if standing alone."). The first provision, "[i]f the municipality sells the property, the General Land Office may grant to the purchaser a lease of the state-owned tideland, water, and bed beneath the property of, if necessary, a larger area for a period of not more than 99 years after the purchase[,]" means exactly what it says. TEX. LOC. GOV'T CODE ANN. § 307.042(e). In the event the City sells the Flagship Property, the GLO may, but is not required to, grant a 99–year lease to the purchaser. The lease covers the State-owned tideland, water, and bed already occupied by the City, and may be extended to cover a larger area if necessary.

The second provision, "[t]he purchaser ... ha[s] the same right of use and occupancy to the state-owned tideland, water, and bed as is granted to the municipality under this chapter[,]" means that the GLO may not restrict the Flagship purchaser's use of the State-owned submerged land to anything less than the manner in which the City had been using the land. *Id.* Nor is the GLO required, in negotiating a lease with the purchaser, to allow the purchaser to make greater use of the submerged land than that made by the City. In other words, this statutory provision contemplates that the Flagship purchaser has the right to continue to use and occupy the State-owned submerged land as a public park, in the same manner as the City had done for the past fifty years. Any consideration that the purchaser must pay for that right is a separate matter entirely.

*Rental Payments*

Appellants concede that section 307.042(e) permits the GLO to enter into a lease with the Flagship purchaser. Appellants assert, however, that the GLO should not be allowed to charge rent pursuant to that lease because section 307.042(e) does not expressly authorize the GLO to charge rent.

■ Appellants' argument fails for several reasons. First, in interpreting statutory language, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a). As we previously discussed, in common usage, the term "lease" implies that rental payments may be the required consideration provided in exchange for the right to use and occupy certain property. *See* BLACK'S LAW DICTIONARY 898 (7th ed.1999) (defining "lease" as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange for consideration, usu. rent"); MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 708 (11th ed.2003) (defining "lease" as "a contract by which one conveys real estate, equipment, or facilities for a specified term and for a specified rent"); 8 OXFORD ENGLISH DICTIONARY 769

(2d ed.1989) (defining "lease" as "[a] contract between parties, by which the one conveys lands or tenements to the other for life, for years, or at will, usually in consideration of rent or other periodical compensation"). Thus, the commonly used and understood meaning of "lease" encompasses the concept of rental payments. While the City benefits from a private entity's willingness to improve its distressed fixtures, section 307.042(e) does not preclude the GLO from seeking rent, as part of a lease agreement, in exchange for the use of State-owned submerged land.

Second, the legislative history presumes that the GLO will charge rent in the event it decides to enter into a lease with the Flagship purchaser. Specifically, the bill analysis states as follows: "The GLO would not be required to grant the lease. If granted, the state would benefit from the continued annual lease payments...." HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. S.B. 673, 77th Leg., R.S. 52 (2001). Hence, the legislative history indicates that the Legislature intended the term "lease" to encompass rental payments.

 Finally, "legislative grants of property, rights, or privileges must be construed strictly in favor of the state on grounds of public policy, and whatever is not unequivocally granted in clear and explicit terms is withheld." *Empire Gas & Fuel Co. v. State*, 121 Tex. 138, 158, 47 S.W.2d 265, 272 (1932). Here, with no express provision precluding the GLO from charging rent for the use of State-owned submerged land—either to Landry's or to the City as its predecessor—we will not impute such a restriction.

* * *

Local Government Code section 307.042(e) authorizes the GLO to require the Flagship purchaser to enter into a lease for the State-owned submerged land beneath the pier. In the event the GLO decides to lease the land, nothing in the statute restricts the GLO from seeking consideration in the form of rental payments for the right to use and occupy the land. The legislative history of section 307.042(e) further indicates that the Legislature intended for the GLO to assess an annual lease payment. This interpretation of the statute comports with the common usage of the term "lease," which encompasses the concept of rental payments as among the forms of consideration offered in exchange for the right to use and occupy certain property. Moreover, this interpretation may be harmonized with the "same right of use and occupancy" language of the statute by construing the latter to mean simply that the purchaser may continue to use the Flagship Property in the same manner in which the City had used it—as a public park. Accordingly, we conclude that, pursuant to section 307.042(e), the GLO may require Landry's to enter into a lease, with annual rental payments, for the right to use and occupy the State-owned submerged land beneath the Flagship Property.[6]

### Conclusion

We affirm the judgment of the trial court.

---

6. The GLO further contends that the permanent school fund provision of the Texas Constitution compels a determination that the GLO may charge rent for the Flagship purchaser's use of the State-owned submerged land beneath the pier. *See* TEX. CONST. art. VII, §§ 2, 4, 5. In light of our holding that section 307.042(e) permits the GLO to require Landry's to pay rent for use of the submerged land, we need not consider the GLO's argument that a contrary interpretation of section 307.042(e) would be unconstitutional.