IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00164-CR

 

Adam Lee Robinson,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 249th District Court

Johnson County, Texas

Trial Court No. F34441

 



MEMORANDUM  Opinion










 

            Adam Lee Robinson was convicted of the
felony offense of Injury to a Child with Intent to Cause Bodily Injury and was
placed on community supervision.  After a plea of not true to two counts of the
State's motion to revoke and pleas of true to the remaining counts, and after
hearing testimony, the trial court revoked Robinson’s community supervision and
sentenced him to eight years in prison.  Robinson appealed.  Robinson's counsel
filed an Anders brief.  See Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).  We affirm.

            In the brief, counsel asserts that she
reviewed the complete reporter's and clerk's records in search of potentially
meritorious grounds of error on appeal.  Counsel concludes that the appeal is
frivolous.  Although counsel informed Robinson of the right to file a brief, he
did not file a brief.  The State did not file a response.

            We must, "after a full
examination of all the proceedings, . . . decide whether the case is wholly
frivolous."  Anders, 386 U.S. at 744; accord Stafford v. State, 813 S.W.2d 503, 509-11 (Tex. Crim. App. 1991); Coronado
v. State, 996 S.W.2d 283, 285 (Tex. App.—Waco 1999, order) (per curiam), disp.
on merits, 25 S.W.3d 806 (Tex. App.—Waco 2000, pet. ref'd).  An appeal is
"wholly frivolous" or "without merit" when it "lacks any
basis in law or fact."  McCoy v. Court of Appeals, 486 U.S. 429, 439 n.10, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988).  Arguments are frivolous when they
"cannot conceivably persuade the court."  Id. at 436.  An
appeal is not wholly frivolous when it is based on "arguable
grounds."  Stafford, 813 S.W.2d at 511.

            After reviewing the record, we
determine that the appeal is wholly frivolous. Accordingly, we affirm.

            We remind counsel of the duty to
inform Robinson of his right to file a petition for discretionary review.  See
Ibarra v. State, 226 S.W.3d 481, 482-483 (Tex. App.—Waco 2006, no pet.);
see also Meza v. State, 206 S.W.3d 684, 689 (Tex. Crim. App.
2006).

 

                                                                        TOM
GRAY

                                                                        Chief
Justice




Before
Chief Justice Gray,

            Justice
Vance, and

            Justice
Reyna

Affirmed

Opinion
delivered and filed February 6, 2008

Do
not publish 

[CR25]






struct.  After the city planner and engineers had
input, the preliminary plat was reviewed by the Planning and Zoning Commission
and then the Lorena City Council voted to approve the preliminary plat.  After
the approval of the preliminary plat, BMTP began construction of the
infrastructure, which included the necessary facilities to service each lot
with water, sewer, and other utilities as well as streets, curbs, and gutters. 
The sewer system was constructed by installing a line that connected to the
City’s existing line and then extended a sewer tap to each lot within the
subdivision to be later connected to a residence when it was constructed.

            The final plat for Phase V
was submitted to the City Council for approval, and was approved by the
Council’s vote on January 16, 2006.  Approval of the plat signified that the
City had accepted the plat, that the plat complied with any relevant City
ordinances, and that the subdivision was ready for residential construction. 
Prior to the plat’s final approval, the sewer taps were required to be
connected to the City’s sewer system and tested.  Before beginning construction
on a residence, an application for a sewer connection was required in order to
secure a residential building permit from the City.

            Although the vote approving
the final plat regarding Phase V by the City Council took place on January 16,
2006, the final plat was not delivered to a representative of BMTP until June
5, 2006.  The plat was recorded with the McLennan County Clerk by BMTP the same
day.  When the City Manager delivered the final plat to BMTP’s representative,
he informed the representative that a moratorium on the issuance of sewer taps
had been adopted earlier that day, June 5, 2006.  The infrastructure had been
fully completed prior to that date.  Additionally, by that time BMTP had sold
fifteen of the twenty-one lots in Phase V, and all of the lots in Phase IV but
one.

            The City was aware that it
was having substantial capacity problems in its sewer system as early as 2003;
however, the City contended that it was not until May of 2006 that they
realized the depth of the problem, which led to the initial moratorium. 
According to the City Manager, it was the responsibility of the City’s
engineers to review the plat prior to approval and to determine, in part, that
the City’s infrastructure, including its sewer capacity, was sufficient.  It
was the opinion of the engineers that the sewer capacity of the City was
sufficient to support the subdivision until the end of May, 2006 when the
engineers informed the City that the City was operating above its capacity and
that the moratorium was needed to attempt to get the problem under control
until a new sewer plant could be constructed.

The final approval of the plat included
a statement by the City Engineer that the plat conformed to the City’s subdivision
ordinance and recommended approval of the final plat.  A second engineer
certified that “proper engineering consideration” had been given to the plat
that had been signed on June 5, 2006, which was the same day that the first
moratorium was voted on by the City Council.  The plat did not become effective
until it was recorded with the County Clerk of McLennan County, which was on
June 5, 2006.

            The City’s moratorium was
adopted by an ordinance on its second reading on June 12, 2006 to prevent the
connection of any new residential or commercial buildings to the City’s sewer
system for a period of 120 days.  During the 120 days, the City agreed to
exempt from the moratorium the fifteen lots in Phase V that had either been
sold or were under contract to be sold by BMTP as of June 5, 2006.  The
original moratorium was extended and reworded at various times until November
17, 2008, when it was repealed and replaced by a new moratorium that was in
large part substantively the same as the prior moratoriums.  

            On April 24, 2008, BMTP
filed a declaratory judgment action against the City of Lorena seeking a
declaration that the City’s moratorium in effect at that time did not apply to
Phase V; that the City could not enforce the moratorium as to the lots in Phase
V because they were previously approved for development; and that the City
could not deny building permits for the remaining lots in Phase V due to the
moratorium.[1]

            BMTP filed a motion for
summary judgment and the City filed a plea to the jurisdiction, both of which
were denied by the trial court.  The City then filed a traditional motion for
summary judgment.  BMTP responded to the City’s motion, filed a motion to
reconsider the denial of its motion for summary judgment, and amended its
petition to include an inverse condemnation cause of action.  The trial court
granted the City’s motion for summary judgment and denied BMTP’s motion to
reconsider the trial court’s prior denial of its motion for summary judgment. 
The City filed another motion for summary judgment directed against the inverse
condemnation claim, which the trial court also granted.  The trial court also
awarded the City its attorney’s fees.

Standard of Review

Both parties’ motions for summary
judgment sought judgments that would declare the parties’ rights pursuant to
the declaratory judgment actions.  We review declaratory judgments under the
same standards as other judgments.  See Tex. Civ. Prac. & Rem. Code Ann. § 37.010 (Vernon 2008). 
We look to the procedure used to resolve the issue before the trial court to
determine the standard of review on appeal.  City of Galveston v. Tex. Gen.
Land Office, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet.
denied).  When a trial court resolves a declaratory judgment action on
competing motions for summary judgment, we review the propriety of the
declaratory judgment using the same standards that we follow in reviewing a
summary judgment.  Id.

We review a trial
court’s decision to grant or to deny a motion for summary judgment de novo.  See
 Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192,
199 (Tex. 2007) (citing rule for review of grant of summary judgment and
reviewing denied cross-motion for summary judgment under same standard). 
Although a denial of summary judgment is not normally reviewable, we may review
such a denial when both parties move for summary judgment and the trial court
grants one motion and denies the other.  Id. at 192.  In our review of
such cross-motions, we review the summary judgment evidence presented by each
party, determine all questions presented, and render the judgment that the
trial court should have rendered.  Tex. Mun. Power Agency, 253
S.W.3d at 192 (citing Comm’rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997)).

Under the
traditional summary judgment standard, the movant has the burden to show that
no genuine issues of material fact exist and that it is entitled to judgment as
a matter of law.  Tex. R. Civ. P.
166a(c); Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985).  If the order granting the summary judgment does not specify the grounds upon
which judgment was rendered, we must affirm the summary judgment if any of the
grounds in the summary judgment motion is meritorious.  FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

Local Government Code Chapter 212

            BMTP complains that the
trial court erred by granting the City’s motion for summary judgment and
denying its motion for summary judgment because chapter 212 of the Local
Government Code prohibits the imposition of a moratorium on its property that
had already been approved for property development prior to the imposition of
the original moratorium.

            Under section 212.135 of the
Local Government Code, a municipality has the power to institute a moratorium
on property development if it demonstrates a “need to prevent a shortage of
essential public facilities.”  Tex. Loc.
Gov’t Code Ann. § 212.135(a) (Vernon 2008).  Sewer facilities are
included in public facilities.  Tex.
Loc. Gov’t Code Ann. § 212.131(1) (Vernon 2008).  Property development
is defined as “the construction, reconstruction, or other alteration or
improvement of residential or commercial buildings or the subdivision or the
replatting of a subdivision of residential or commercial property.”  Tex. Loc. Gov’t Code Ann. § 212.131(3)
(Vernon 2008).  

            In order to impose a
moratorium on property development to prevent a shortage of essential public
facilities, certain written findings must be included by the municipality, one
of which is a summary of “evidence demonstrating that the moratorium is
reasonably limited to property that has not been approved for development
because of the insufficiency of existing essential public facilities.”  Tex. Loc. Gov’t Code Ann. §
212.135(b)(2)(B) (Vernon 2008).

            BMTP contends that the
approval of their plats constituted “property development” pursuant to section
212.131, and that the moratorium therefore did not, and could not, apply to
sewer connections on any of the vacant lots in their approved subdivisions
pursuant to the restriction in section 212.131(b)(2)(B) that excludes property
that has been approved for development.  The City contends that BMTP’s scope of
approved property development is too broad and that once BMTP completed all of
the property development that it was permitted to complete, which was the
subdivision and infrastructure only, additional approval was required separate
and apart from that to develop the property further, including connections to
the sewer system.  According to the City, once the subdivision infrastructure
to be built by BMTP was complete according to the approved plat, then BMTP’s
property development that was approved was completed and the City could
institute a moratorium to prevent additional development of that property.

            Prior to the amendment of
the statute in 2005, “property development” was defined in section 212.131 of
the Local Government Code as “the construction of residential buildings.”  See
Acts 2001, 77th Leg., ch. 441, effective September 1, 2001; amended by
Acts 2005, 79th Leg., ch. 1321 (H.B. 3461), § 1, effective September 1, 2005. 
The statute was amended in 2005 to add other types of residential development
as well as commercial development into the definition of “property
development.”  The City contends that the statute should be read to contain two
separate types of property development; the first being the “construction,
reconstruction, or other alteration or improvement of residential or commercial
buildings,” and the second, “the subdivision or replatting of a subdivision of
residential or commercial property.”  The City further contends that each of
the two types of development is separate and distinct for purposes of
determining whether property has been “approved for development.”  See Tex. Loc. Gov’t Code Ann. §
212.135(b)(2)(B) (Vernon 2008).  

Neither party has cited to, nor have we
found any authority regarding the scope of chapter 212.  We find that the
definition of “property development” includes the full range of development
contemplated by section 212.131(3) and that it does not describe each of the
component parts separately and distinctly from the others.  Any other
construction would allow a city to approve a subdivision development for the
construction of the infrastructure but to then prevent the developer from doing
anything else with the property by denying building permits for the lots to
which the developer had built the infrastructure.  This seems to be the very
problem the amendments were designed to cure.[2] 
Otherwise, we have the absurd result that the developer gets the city’s
approval to construct all of the infrastructure, even including the required
construction and testing of the sewer taps, only to be effectively told that no
houses can be built or sold because of inadequate sewage facilities,
notwithstanding the fact that adequacy of the sewage facilities was a factor to
be considered before the development was approved in the first instance.  

Our construction of section 212.131(3)
is similar to the application of the term “project” in Chapter 245 of the Local
Government Code, which regulates the issuance of permit applications.  See
Tex. Loc. Gov’t Code Ann. Ch. 245
(Vernon 2005).  The term “project” in Chapter 245 has been held to encompass
the entire development process from the preliminary plat to the construction of
a structure within the subdivision, which does not change unless the scope of
the “project” changes, regardless of changes in ownership.  See Hartsell
v. Town of Talty, 130 S.W.3d 325, 328-29 (Tex. App.—Dallas 2004, pet.
denied).  Chapter 245 contemplates that more than one permit is required to
complete a project, but the project includes the entire process, not the
discrete components.  The definition of “property development” is similarly
broad and includes the entire process from platting to finishing construction
of infrastructure and buildings.

            We hold that the trial court
erred by granting the City’s motion for summary judgment based on Subchapter E
of Chapter 212 of the Local Government Code.  Further, we find that the trial
court erred by denying BMTP’s motion for summary judgment to make the
declarations as prayed for by BMTP.  BMTP was entitled to the following
declarations:

(1)    Under Chapter 212 of the Local
Government Code, any moratorium currently in effect on the issuance of sewer
taps within the City of Lorena and its extraterritorial jurisdiction does not
apply to any of the lots contained in South Meadows Estates, because South
Meadows Estates was approved for development before the adoption of these
moratoriums;

 

(2)    The City shall not enforce the current
moratorium or any extension thereof to the lots contained in South Meadows
Estates because those lots have already been approved for development;

 

(3)    The City shall not deny building permits
for the remaining lots in South Meadows Estates based upon any existing
moratorium. 

 

By this holding, we express no opinion
as to whether the City has the ability to deny a permit for reasons other than
the moratorium or BMTP’s damages, if any, that might be related thereto.[3]  We sustain issue
one.  We sustain issue two solely on the basis of subchapter 212.  Because we
have determined that Phase V was not subject to the moratorium pursuant to
chapter 212, we do not reach the issues of whether or not the moratoriums were
enacted in conformance with the requirements of chapter 212 or whether chapter
245 applies.

Inverse Condemnation

             BMTP complains that the
trial court erred by granting the City’s motion for summary judgment based on
BMTP’s inverse condemnation claim.  BMTP alleged in its petition that the
moratorium constituted a taking pursuant to article I, section 17 of the Texas
Constitution.  Tex. Const. art.
I, § 17.  The City’s motion for summary judgment sought a finding that as a
matter of law the moratorium could not constitute a compensable taking.  

A taking may be either physical or
regulatory.  Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998).  A compensable regulatory taking occurs if: (1) the governmental regulations
deprive a property owner of all economically viable use of the property or
totally destroys the property’s value; or (2) the governmental restrictions
unreasonably interfered with BMTP’s rights to use its property.  See id. 
We are to conduct an essentially “ad hoc, factual inquir[y]” using the
following guiding factors: (1) the economic impact of the regulation on BMTP;
(2) the extent to which the regulation has interfered with BMTP’s reasonable
investment-backed expectations; and (3) the character of the City’s action.  Sheffield
Dev. Co. v.  City of Elgin Heights, 140 S.W.3d 660, 672 (Tex. 2004).  In
addition to these factors, which are generally referred to as the Penn
Central factors, we should consider all relevant attendant circumstances as
well.  Penn Central Transport Co. v. New York City, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978); Hallco Tex., Inc v. McMullen County, 221 S.W.3d 50, 56 (Tex. 2006).

We note that, based on the precedent of
the Texas Supreme Court in Sheffield, that the burden required in the
factual allegations presented by BMTP is a high one.  Id.  Sheffield complained that a temporary moratorium constituted a compensable taking but the
Court disagreed.  Sheffield related to a purchaser of property who
purchased the property relying on certain zoning standards then in effect, who
had extensive contacts with City officials regarding his plans for the
development, and who was similarly, as the Court put it, “blindsided” by the
City’s moratorium.  See Sheffield Dev. Co., 140 S.W.3d at 678.  However,
while the Court did not approve of the City’s methods in Sheffield, the
Court nevertheless found that there was not a constitutionally compensable
taking, either for the change in zoning or for the temporary moratorium.  

In Sheffield, however, there was
not a challenge to the ability of the City to impose the moratorium.  Sheffield
Dev. Co., 140 S.W.3d at 679.  In this case, however, the City’s motion for
summary judgment on the inverse condemnation action was premised upon the
application of the moratorium to BMTP.  Therefore, we believe that the judgment
entered on the inverse condemnation cause of action must also be reversed and
remanded because of our finding that the moratorium did not apply to BMTP’s
lots.  We sustain issue three.

Attorney’s Fees

BMTP complains that the trial court
abused its discretion by awarding attorney’s fees to the City and denying its
request for attorney’s fees pursuant to the Uniform Declaratory Judgment Act.  Tex. Civ. Prac. & Rem. Code Ann. §
37.009 (Vernon 2008).  Section 37.009 allows for the recovery of attorney’s
fees that are reasonable and necessary as well as equitable and just.  Id.  Because we have determined that the trial court erred by granting the City’s
motion for summary judgment and by denying BMTP’s motion for summary judgment,
we reverse the award of attorney’s fees to the City and remand that issue to
the trial court for a determination of whether attorney’s fees should be
awarded and to which party, if any.  See State Farm Lloyds v. Borum, 53
S.W.3d 877, 894-95 (Tex. App.—Dallas 2001, pet. denied) (reversing and
remanding “because the record does not reflect the trial court’s reasons for
its award of fees to [the prevailing party], there is no evidence to indicate
whether the trial court’s award of fees would also be equitable and just in
light of our opinion in this case.”).  We sustain issue four.

Conclusion

            We find that the trial court
erred by granting the City’s motions for summary judgment and by denying BMTP’s
motion for summary judgment based on the declaratory judgment action.  We
reverse and render judgment in favor of BMTP on its declaratory judgment
action.  We reverse and remand the inverse condemnation claim to the trial
court for further proceedings.  We find that the award of attorney’s fees
should be reversed and remanded to the trial court for further proceedings in
accordance with this opinion.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

Before Chief
Justice Gray,

            Justice
Davis, and

            Judge
Sowder[4]

Reversed and
rendered in part; Reversed and remanded in part

Opinion
delivered and filed June 1, 2011

[CV06]









[1]
The petition seeking the declaratory judgment was later amended by BMTP to
include all of South Meadows Estates, which included Phase IV.





[2]
The City argues the legislature “segregated the construction of residential
buildings from the subdivision of residential property” by its definition of
property development.  But to the contrary, the legislature made the definition
of “property development” expansive by including within it aspects of the
development and build-out that may be performed by different entities or
owners.





[3]
By this holding, we do not hold, as argued by the City, that the City has
approved the construction of residential buildings on the lots in question.  We
hold only that the moratorium is not applicable to those lots.





[4]
The Honorable William C. Sowder, Judge of the 99th District Court of Lubbock County, sitting by assignment of the Chief Justice of the Supreme Court of
Texas pursuant to section 74.003(h) of the Government Code.  See Tex. Gov’t Code Ann. § 74.003(h)
(Vernon 2005).