

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-12-00105-CV

**SHERRIE LOUISE TAYLOR,**

**Appellant**

**v.**

**FOREMOST LLOYDS OF TEXAS,**
**ALVIN LANCE LOUGH**
**AND BANK OF AMERICA, NA,**

**Appellees**

_____

**From the 18th District Court**
**Johnson County, Texas**
**Trial Court No. C200900407**

---

## MEMORANDUM OPINION

---

Appellant, Sherrie Louise Taylor, challenges the trial court's summary judgment in favor of appellees, Alvin Lance Lough and Bank of America, N.A. (the "Bank").[1] In one issue, Taylor asserts that the trial court erred in granting summary judgment in favor of the Bank and denying her summary-judgment motion. We affirm.

---

[1] Though named as a party to the judgment and appeal, Lough has not filed a brief in this matter.

# I.  BACKGROUND

The dispute in this case centers on who is entitled to insurance proceeds associated with a house that burned down.  Taylor claims that she is entitled to the proceeds because, among other things, she and Lough lived together in a house located at 116 Wood Dale in Burleson, Texas, from 2005 to 2007.  Apparently, Taylor continued living in the house after the couple broke up and Lough moved out in mid-2007.

In any event, on March 1, 2007, Lough, an "unmarried person," executed a homestead lien contract and deed of trust with the Bank for a loan secured by the property at issue in this case—the proceeds of which, according to Taylor, were used to buy land to move Lough's feed store.  The contract and deed of trust specifically stated that Lough granted the Bank a lien . . . "in and to the following described real property, together with all improvements, all proceeds (including without limitation premium refunds) of each policy of insurance relating to any of the improvements, or the Real Property . . . ."

As of March 1, 2007, the Johnson County property records indicated that title to the property was vested in Lough.  The terms of the contract and deed of trust required Lough to purchase and maintain "policies of fire insurance with standard extended coverage endorsements" for the property, including "an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Owner or any other person."  The contract and deed of trust also stated that: "Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain proceeds of any insurance and apply the proceeds to the reduction of the

indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property."

Thereafter, Lough purchased a fire insurance policy from Foremost Lloyd's of Texas ("Foremost"). On the declarations page of the insurance policy, Lough was listed as the insured and the Bank was identified as the mortgagee. The "Mortgage Clause" of the insurance policy provided the following:

> b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown on the declarations page as interests appear.

> c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

> . . . .

> e. If we pay the mortgagee for any loss or damage and deny payment to you [Lough] because of your acts or because you fail to comply with the terms of this policy:

> . . . .

> (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

Nowhere in the insurance policy is Taylor listed as an insured.

In her third amended petition for declaratory relief, Taylor alleged that Lough executed a quitclaim deed to the property in favor of her on January 29, 2007. However, Taylor did not record this deed until September 17, 2007. Furthermore, the Bank contends in its brief that Lough and Taylor executed reciprocal quitclaim deeds to the

property on or about January 29, 2007; thus, Taylor did not have a clear ownership interest in the property.[2]

In July 2007, the relationship between Lough and Taylor soured, and a dispute arose over ownership of the property. After Taylor recorded her deed, Lough filed suit, seeking a declaration that he is the owner of the property and that Taylor's deed is void.[3] After several settings, the trial court signed a final judgment in favor of Taylor on May 26, 2009. Specifically, the final judgment stated that Taylor owned the property in question pursuant to the quitclaim deed.

On May 30, 2009, the property was damaged by fire. Thereafter, Taylor sued Lough and Foremost to recover the proceeds from the insurance covering the property. The Bank intervened, seeking a declaration that it was entitled to the insurance proceeds pursuant to the terms of the insurance policy. Foremost deposited the insurance proceeds into the registry of the court and was subsequently non-suited.

Later, the Bank filed traditional and no-evidence motions for summary judgment, arguing that it was entitled to the insurance proceeds because: (1) the Bank is a third-party creditor beneficiary under the insurance policy with standing to enforce its rights to the proceeds; (2) Taylor lacks standing to challenge the enforceability of the insurance policy because she is a stranger to the contract; and (3) even if Taylor has standing, her challenges to the enforceability of the insurance policy fail as a matter of

---

[2] The record does not contain a copy of the quitclaim deed allegedly executed by Taylor in favor of Lough. However, Lough directs us to an affidavit he executed and deposition testimony, wherein he alleged that "Sherrie Taylor simultaneously executed a quitclaim deed of the same property back to me." Taylor disputes this assertion.

[3] The Bank was originally named as a party to Lough's suit, but it was subsequently non-suited.

law.  The Bank's summary-judgment motion was scheduled to be heard on February 2, 2012.

On January 27, 2012, Taylor responded to the Bank's summary-judgment motions and also filed a "counter motion" for summary judgment, wherein she argued that the Bank's lien is invalid because the Bank had notice of Taylor's homestead rights and did not obtain her consent to the lien; the Bank had actual and constructive notice of Taylor's ownership interest in the property; res judicata and collateral estoppel barred the Bank from disputing Taylor's ownership interest; and the Bank's lien violated the Texas Constitution's prohibitions governing liens on homesteads.

The Bank objected to Taylor's "counter motion" for summary judgment because it was not served at least twenty-one days before the scheduled hearing.  *See* TEX. R. CIV. P. 166a(c).  The record does not contain an explicit ruling on the Bank's objection.

On February 2, 2012, the trial court conducted a hearing on the Bank's "Amended Traditional and No[-]Evidence Motion for Summary Judgment, Plaintiff's Response, Intervenor's Reply, the evidence on file, and the arguments of counsel."  The trial court made no mention of Taylor's "counter motion."  In any event, the trial court granted the Bank's summary-judgment motion without specifying the grounds.  As a result of the trial court's judgment, the Bank was awarded the insurance proceeds deposited in the court's registry, and Taylor took nothing.

Taylor subsequently filed a motion for new trial and a motion for reconsideration, both of which were denied by the trial court.  This appeal followed.

## II. STANDARD OF REVIEW

The purpose of a declaratory action is to establish the existing rights, status, or other legal relationships between the parties. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2008). Suits for declaratory judgment are intended to determine the rights of parties when a controversy has arisen, but before any wrong has been committed. *See Armstrong v. Hixon*, 206 S.W.3d 175, 179 (Tex. App.—Corpus Christi 2006, pet. denied); *Montemayor v. City of San Antonio Fire Dep't*, 985 S.W.2d 549, 551 (Tex. App.—San Antonio 1998, pet. denied).

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008); *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *See Hawkins*, 214 S.W.3d at 719; *Armstrong*, 206 S.W.3d at 179; *see also City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Because the trial court determined the declaratory judgment through summary judgment proceedings, we review the propriety of the trial court's declarations under the same standards that we apply to summary judgments. *See City of Galveston*, 196 S.W.3d at 221; *City of Austin v. Garza*, 124 S.W.3d 867, 871 (Tex. App.—Austin 2003, no pet.); *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The function of a summary judgment is to eliminate patently unmeritorious claims and untenable defenses, not to deprive litigants of the right to a trial by jury. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We review the grant or denial of a summary judgment de novo. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192, 199 (Tex. 2007); *see also Provident Life & Accident Ins. Co.*, 128 S.W.3d 211, 215 (Tex. 2003). If the trial court's order granting summary judgment does not specify the ground or grounds relied upon for the ruling, we will affirm the judgment on appeal if any of the theories advanced by the movant are meritorious.[4] *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

Here, the Bank filed traditional and no-evidence motions for summary judgment in response to Taylor's request for a declaration that she is entitled to the insurance proceeds. When a party moves for both a traditional and a no-evidence summary judgment on the same ground, we first review the trial court's judgment under the

[4] Taylor urges us to apply the standard governing instances where both parties have filed motions for summary judgment. We decline to do so for two reasons. *See, e.g., Mid-Continent Cas. Co. v. Global Enercom Mgmt.*, 323 S.W.3d 151, 153-54 (Tex. 2010) (stating that when both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered). First, the record reflects that Taylor filed her "counter motion" for summary judgment on January 27, 2012, which was less than twenty-one days before the scheduled hearing on the motions. *See* TEX. R. CIV. P. 166a(c) (providing that the summary-judgment motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing); *see also Rutledge v. Miller*, No. 10-05-00018-CV, 2006 Tex. App. LEXIS 889, at **2-3 (Tex. App.—Waco Feb. 1, 2006, no pet.) (mem. op.). Therefore, because Taylor's "counter motion" for summary judgment was not filed in compliance with the Rules of Civil Procedure, the trial court was not required to consider it at the February 2, 2012 hearing. *See* TEX. R. CIV. P. 166a(c); *see also Etheredge v. Hidden Valley Airpark Assoc.*, 169 S.W.3d 378, 383 (Tex. App.—Fort Worth 2005, pet. denied) (noting that summary judgment is a harsh remedy and that courts must strictly construe the notice requirements of Texas Rule of Civil Procedure 166a). This brings us to the second reason why we decline to apply the standards suggested by Taylor. The trial court, in its final judgment specifically noted that it only considered the Bank's traditional and no-evidence motions for summary judgment, Taylor's response, the Bank's reply, the evidence on file, and the arguments of counsel. Nowhere in the final judgment does the trial court state that it considered Taylor's "counter motion" for summary judgment. Therefore, we decline to apply the summary-judgment standards suggested by Taylor.

standards of rule 166a(i) pertaining to no-evidence motions for summary judgment. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *All Am. Tel., Inc. v. USLD Commc'ns, Inc.*, 291 S.W.3d 518, 526 (Tex. App—Fort Worth 2009, pet. denied); *see* TEX. R. CIV. P. 166a(i). If the non-movant failed to produce more than a scintilla of evidence under that burden, then there is no need to analyze whether the movant's summary-judgment proof satisfied the rule 166a(c) burden for traditional motions for summary judgment. *See Ridgway*, 135 S.W.3d at 600; *see also All Am. Tel., Inc.*, 291 S.W.3d at 526.

We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). After an adequate time for discovery has passed, a party without the burden of proof at trial may move for summary judgment on the ground that the nonmoving party lacks supporting evidence for one or more essential elements of its claim. *See* TEX. R. CIV. P. 166a(i); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682-83 (Tex. App.—Dallas 2000, no pet.). Once a no-evidence motion for summary judgment has been filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006). The trial court should not grant a no-evidence motion for summary judgment if the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact on the challenged element. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). More than a scintilla of evidence exists if the evidence would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008) (per curiam);

*Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (noting that less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" (citing *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983))).  We review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not.  *Tamez*, 206 S.W.3d at 581-82; *King Ranch, Inc.*, 118 S.W.3d at 750.

## III.   ANALYSIS

In what appears to be a multifarious argument, Taylor contends that the trial court erred in granting the Bank's summary judgment for reasons previously stated in her "counter motion" for summary judgment.  The Bank counters that Taylor lacks standing to challenge the enforceability of the insurance policy because she is a stranger to the contract.  The Bank further argues that it is a third-party creditor beneficiary pursuant to the insurance policy, and as such, it is entitled to the insurance proceeds as a matter of law.

### A.   Third-Party Beneficiaries to Insurance Contracts

Insurance policies are contracts, so the rights and duties they create and the rules governing their interpretation are those generally pertaining to contracts.  *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).  Under the general law of contracts, a party must show either privity or third-party-beneficiary status in order to

have standing to sue.  *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 728 (Tex. App.—Dallas 2007, pet. denied).

To qualify as a third-party beneficiary, a third party must show that it is either a donee or creditor beneficiary of the contract, and not one who is benefited only incidentally by its performance.  *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).  The intention of the contracting parties is controlling.  *Id.*  "The intention to contract or confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by a third party must be denied."  *Id.*; *accord Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011).  We glean the parties' intention from the words of their contract, and not from what they allegedly meant.  *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006); *see also Ostrovitz & Gwinn, LLC v. First Specialty Ins. Co.*, No. 05-11-00143-CV, 2012 Tex. App. LEXIS 10379, at *16 (Tex. App.—Dallas Dec. 13, 2012, no pet.).  "All doubts must be resolved against conferring third-party beneficiary status."  *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011); *see First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 929 (Tex. App.—Dallas 2005, no pet.) ("If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on the third party, then the third-party beneficiary claim must fail.").  Texas courts have occasionally recognized third-party beneficiaries in the insurance context when the policy language so requires.  *See, e.g., Paragon Sales Co. v. N.H. Ins. Co.*, 774 S.W.2d 659, 660-61 (Tex. 1989) (per curiam).

**B.** **Discussion**

Here, the evidence indicates that Lough and Foremost entered into the insurance contract to directly benefit the Bank. In fact, as a condition of the loan, Lough was required to secure the fire-insurance policy specifically for the Bank's benefit. Furthermore, the insurance policy at issue identifies the Bank as the mortgagee and states that, in the event of damage or loss to the property, the Bank, as mortgagee, is entitled to the insurance proceeds. Thus, it is clear from the document itself that the parties intended for the Bank to be a third-party creditor beneficiary to the insurance policy so long as the Bank's mortgage encumbered the property. *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) ("In contrast, an agreement benefits a 'creditor' beneficiary if, under the agreement, 'that performance will come to him in satisfaction of a legal duty owed to him by the promise. This duty may be an indebtedness, contractual obligation[,] or other legally enforceable commitment owed to the third party." (internal citations omitted)). It is also clear from the insurance policy that Lough was the only named insured. Further, the contract and deed of trust between Lough and the Bank identifies Lough as the sole owner of the property at the time both documents were executed.

Despite this, Taylor asserts that she was the true owner of the property when the deed of trust and insurance policy were executed, and thus, the insurance policy and deed of trust are invalid and the Bank is not entitled to the insurance proceeds. However, in asserting these arguments, Taylor did not proffer probative evidence indicating that she has standing to challenge the insurance policy. She does, however,

rely on the quitclaim deed, which was signed on January 29, 2007, prior to the execution of the insurance policy.

Taylor's contentions in this case resemble those made in another case—*Automobile Insurance Company of Hartford, Connecticut v. Young*, 85 S.W.3d 334 (Tex. App.—Amarillo 2002, no pet.). In *Young*, the tenant appellee tried to obtain insurance proceeds associated with the landlord's fire-insurance policy that covered the property where the tenant lived. *Id.* at 335-36. The tenant "conceded that she was not designated as an insured under the policy." *Id.* at 337. Instead, she "claimed that she was entitled to recover from Hartford [the insurance company issuing the policy] under constructive trust or creditor beneficiary theories because she also had an insurable interest in the property." *Id.* Reversing the trial court's summary-judgment order, the Amarillo Court of Appeals noted that "a fire insurance policy is a personal contract between the insurer and the insured named in the policy and a stranger to the policy may not ordinarily maintain a suit on it" and concluded that the tenant "was a 'stranger' to the policy" and, thus "could not maintain a suit thereon." *Id.* at 336-37 (citing *St. Paul Lloyd's Ins. Co. v. Huang*, 808, S.W.2d 524, 527 (Tex. App.—Houston [14th Dist.] 1991, writ denied); *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 632 (Tex. App.—Amarillo 1983, writ ref'd n.r.e.)).

In this case, Taylor did not produce any evidence showing that she was a named insured or a party to the insurance policy. Furthermore, the insurance policy does not indicate that Taylor is a third-party beneficiary of the policy. As such, we agree with the Bank that Taylor is a "stranger" to the insurance policy and therefore lacks standing

to challenge its enforceability. *See id.* at 336-37; *Huang*, 808 S.W.2d at 527; *Duval County Ranch Co.*, 663 S.W.2d at 632; *Travelers Fire Ins. Co. v. Steinmann*, 276 S.W.2d 849, 851 (Tex. Civ. App.—Dallas 1955, no writ) (noting that "by the terms of the policies, the insurer is not to be liable beyond the interest of the insured in the property, a stranger to the contract cannot collect thereon simply because he was the owner of an undivided interest in the property"); *see also Campbell v. Auto Ins. Co.*, No. 07-06-0158-CV, 2007 Tex. App. LEXIS 3643, at *5 (Tex. App.—Amarillo May 9, 2007, no pet.) ("With respect to property insurance policies, Texas law has long held that a party who is a complete stranger to the contract is not in a legal position to recover any interest in the policy proceeds."). Thus, we cannot say that Taylor has raised a material fact issue challenging the Bank's status as third-party-creditor beneficiary under the insurance policy and its entitlement to the insurance proceeds. *See Francis*, 46 S.W.3d at 242 (noting that when the trial court does not specify the grounds upon which it relies in granting summary judgment, the summary-judgment order will be affirmed on appeal if any of the theories advanced by the movant are meritorious).

In any event, we also note that Taylor's reliance on the quitclaim deed does not create a material fact issue about who is entitled to the insurance proceeds. The record demonstrates that Taylor did not record her deed until September 17, 2007, which was after (1) Lough and the Bank entered into the insurance contract and deed of trust; and (2) the Bank recorded its deed of trust in Johnson County.[5] *See* Tex. Prop. Code Ann. §

---

[5] The Bank recorded its lien in the "Official Public Records of Johnson County, Texas" on August 9, 2007.

13.001(a) (West 2004).[6]  In fact, the Bank included as an exhibit to its summary-judgment motion a copy of a "Property Report" conducted by Nationwide Appraisal Services Corporation.  The report listed that title to the property was vested in Lough and that the property was free and clear of any other judgments or liens.

Based on the foregoing, we conclude that Taylor failed to produce more than a scintilla of summary-judgment evidence to raise a genuine issue of material fact regarding her lack of standing to challenge the enforceability of the insurance policy and her entitlement to the insurance proceeds.  *See Smith*, 288 S.W.3d at 424; *Hamilton*, 249 S.W.3d at 427; *Ridgway*, 135 S.W.3d at 600; *see also All Am. Tel., Inc.*, 291 S.W.3d at 526.  Accordingly, we cannot say that the trial court erred in granting summary judgment in favor of the Bank.  *See King Ranch, Inc.*, 118 S.W.3d at 750-51; *see also Francis*, 46 S.W.3d at 242.  We therefore overrule Taylor's sole issue on appeal.

---

[6] Section 13.001 of the Texas Property Code provides, in relevant part, that:

(a) A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.

(b) The unrecorded instrument is binding on a party to the instrument, on the party's heirs, and on a subsequent purchaser who does not pay a valuable consideration or who has notice of the instrument.

TEX. PROP. CODE ANN. § 13.001(a)-(b) (West 2004).

## IV.    CONCLUSION

Having overruled Taylor's sole issue on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed March 7, 2013
[CV06]