

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-2003

# Koorn v. Lacey

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1231

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Koorn v. Lacey" (2003). *2003 Decisions*. Paper 199.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/199

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1231

SHAIN KOORN;
RAFAELA KOORN
aka RACHAEL KOORN,

Appellants

v.

LACEY TOWNSHIP; RONALD STERLING, MAYOR;
JOHN PARKER; LOUIS AMATO; WILLIAM BOEHM;
JAMES KNOLLER, COMMITTEEMEN; LACEY TOWNSHIP DEPARTMENT
OF COMMUNITY DEVELOPMENT; LOUIS A. D'ARIENZO, DIRECTOR;
KENNETH THOMAS, CODE ENFORCEMENT OFFICER;
LACEY TOWNSHIP BOARD OF HEALTH; LACEY TOWNSHIP
POLICE DEPARTMENT; THOMAS R. DARMODY, CHIEF OF POLICE;
STATE OF NEW JERSEY

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 01-cv-00079)
District Judge: Honorable Anne E. Thompson

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2003

Before: ALITO, AMBRO and CHERTOFF, Circuit Judges

(Opinion filed October 17, 2003)

AMBRO, Circuit Judge:

Plaintiffs Shain and Rafaela Koorn brought a seventeen-count complaint against Lacey Township and various Township officials and departments,[1] alleging the Township's enactment of an animal control ordinance violates their constitutional and statutory civil rights because it was motivated by racial animus. The United States District Court for the District of New Jersey granted the Township's motion for summary judgment on all claims, though its written decision focused primarily on the Koorns' substantive due process claim. Finding no error, we affirm.

## I.
## Facts

Shain Koorn (who is African-American) and Rafaela Koorn (who is Hispanic) purchased a home and property in the Township of Lacey, New Jersey, in 1998. After moving in with many dogs (according to the Koorns, "less than 20"), they were soon informed by the local code enforcement officer of a Township ordinance limiting property owners to six dogs. Later, both the Koorns and the Township discovered that what the code enforcement officer had believed was an official ordinance was in fact an informal policy. In response to complaints from the Koorns' neighbors, in November

---

[1]For convenience, the defendants will be collectively referred to as "the Township."

2000 the Lacey Township Board of Health formally enacted an Animal Control

Ordinance ("Ordinance") limiting the number of dogs that may be kept "in or about a

dwelling" to six.[2]

It is not necessary to describe in detail the ongoing dispute between the Koorns,

their neighbors, and Township officials. It suffices that some of the Koorns' neighbors

began complaining to Township officials about the Koorns' dogs and about certain lights

installed by the Koorns as a security measure. The Koorns allege that the enforcement

actions brought under local dog-barking and lighting ordinances were harassing to them.

As for the enactment of the Ordinance, the relevant additional facts are the alleged racist

statements the Koorns attribute to certain Township officials who were instrumental in

the Ordinance's enactment. One member of the Township Committee—indeed its liaison

to the Board of Health, Ronald Sterling—was an admitted "motivating factor" in the

enactment of the Ordinance. The Koorns allege that Sterling made a racist

remark—consisting of a lynching reference—at a televised Township Committee

meeting. The Koorns also allege that then-Mayor Parker, in conversation with the code

---

[2]The Ordinance states in relevant part: "No person shall maintain, keep, or harbor ... or permit to be maintained, kept or harbored in or about any dwelling or dwelling unit under his control a total of more than six (6) dogs over seven (7) months of age or which possess a set of permanent teeth." The Ordinance was passed pursuant to the Board of Health's authority under N.J.S.A. 26:3-31 to "pass, alter, or amend ordinances and make rules and regulations in regard to the public health within its jurisdiction, for the following purposes...K. to regulate, control or prohibit the keeping and slaughtering of animals."

enforcement officer, made a racist reference to the Koorns.

In January 2001, the Koorns filed a complaint in the District Court alleging that the enactment of the Ordinance violated the Constitution's Fourteenth Amendment (substantive and procedural due process), the Ex Post Facto Clause of Article I, Section of the Constitution, the Fair Housing Act and other civil rights statutes, and various state laws. They simultaneously sought to enjoin the Township from enforcing the Ordinance against them. After the District Court denied their motion for injunction, the Koorns negotiated with the Township for a stay of enforcement. They then amended their District Court complaint to replace the request for injunctive relief with a request for damages. In August 2002, the Township moved for summary judgment, which the District Court granted. Koorn v. Lacey Township, No. 01-79 (D.N.J. Dec. 23, 2002). The Koorns appeal.[3]

## II.
## Discussion

### A.     Substantive Due Process Claims

The Koorns argue that the adoption and enforcement of the Ordinance violates their Fourteenth Amendment substantive due process rights. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due

---

[3]We have jurisdiction pursuant to 29 U.S.C. § 1291. Our review of a summary judgment order is *de novo*, applying the same standard as the District Court. Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996).

process of law." It is well known that while, "on its face, this constitutional provision speaks to the adequacy of state procedures, . . . the clause also has a substantive component." Nicholas v. Pa. State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (citing Planned Parenthood of S.E. Pa. v. Casey, 505 U.S. 833, 846-47 (1992)). This substantive component protects citizens from arbitrary and improperly-motivated government action.

We have previously acknowledged that the "fabric of substantive due process, as woven by our courts, encompasses at least two very different threads." Id. The first "thread" of substantive due process applies to legislative acts. A legislative act is, "generally[,] laws and broad executive regulations" which "apply to large segments of society"—as distinguished from a non-legislative, or executive act, which "typically appl[ies] to one person or to a limited number of persons." Id. at 139 n.1. A legislative act that limits a fundamental right will survive a substantive due process challenge only if it is necessary to promote a compelling governmental interest. Id. at 139. When a fundamental right is not at stake, a law must be rationally related to a legitimate government interest in order to survive a substantive due process challenge. Id.

The second "thread" of substantive due process jurisprudence analyzes "non-legislative," or executive, government actions. Non-legislative government acts may not arbitrarily infringe on fundamental rights protected by the Constitution. Id. at 139. And even where non-legislative action infringes on a fundamental right, only the "*most egregious* official conduct can be said to be 'arbitrary in the constitutional sense.'"

5

Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 400 (3d Cir. 2000) (citing

County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (emphasis in orginal)).  Such

abuse of power must "shock[] the conscience."  Id. at 401 (citing Lewis, 523 U.S. at 846).

**1.      Adoption of the Ordinance does not violate the Koorns' substantive due process rights.**

The Koorns argue that the District Court erred in granting summary judgment in

light of evidence that the Ordinance was instigated by and adopted with the improper

motive of racial animus.  They apply erroneously the second-thread analysis, reserved to

executive action, to a legislative act.  Rather, the Ordinance's adoption is properly

analyzed under the first thread of substantive due process—whether it is rationally related

to a legitimate government interest, or, if fundamental rights are implicated, necessary to

promote a compelling governmental interest.  Nicholas, 227 F.3d at 139.

There is no fundamental right to keep more than a certain number of dogs in a

dwelling unit, so the District Court properly applied rational-basis scrutiny to evaluate the

Ordinance's constitutionality.  *See* Stern v. Halligan, 158 F.3d 729, 731 (3d Cir. 1998)

("[W]hen 'general economic and social welfare legislation' is alleged to violate

substantive due process, it should be struck down only when if fails to meet a minimum

rationality standard, an 'extremely difficult' standard for plaintiff to meet." (quoting

Knight v. Tape, Inc., 935 F. 2d 617, 627 (3d Cir. 1991))).  Thus, to satisfy the rational-

basis test, the Ordinance need only be rationally related to any legitimate government

purpose.  *See* id.  The Ordinance need not be narrowly tailored to achieving that

6

legitimate end.  Id. at 734 ("Mere over- or underinclusiveness will not invalidate social welfare regulation so long as the state action represents a rational response to a legitimate problem."); Rogin v. Bensalem Township, 616 F.2d 680, 689 (3d Cir. 1980) ("The law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." (quoting Williamson v. Lee Optical Co., 348 U.S. 483 (1955))).

Protecting residents' health and safety is a legitimate interest of municipal government.[4]  Stern, 158 F.3d at 732 ("Protecting the health, safety, and general welfare of township inhabitants . . . is plainly in the public interest.").  Large concentrations of dogs can be dangerous and unsanitary.  As a result, a municipality may rationally conclude that limiting the number of dogs in any given dwelling will protect the health and safety of its residents.  The Township does not need to prove that the number of dogs

_____

[4]The Koorns argue that the Ordinance's improper purpose is evidenced in part by its "preemption" by the New Jersey dangerous dog statute, N.J.S.A. § 4:19-17–34.  The statute imposes notice and licensing requirements on owners of dogs found to be "potentially dangerous" or "vicious" by a municipal court.  The statute provides:

> The provisions of this act shall supersede any law, ordinance, or regulation concerning vicious or potentially dangerous dogs, any specific breed of dog, or any other type of dog *inconsistent with this act* enacted by any municipality, county, or county or local board of health.

Id. § 4:19-36 (emphasis added).  A board of health ordinance limiting the number of dogs a person may keep at a dwelling is not inconsistent with a statute imposing requirements on owners of certain dangerous dogs.  Hence the Koorns are wrong to argue that the Ordinance is preempted.

they chose to allow was any more or less rational than any other number, distinguish between large and small dogs, address other pets such as cats, or impose sanitation standards, as the Koorns allege. *See* Stern, 158 F.3d at 734; Rogin, 616 F.2d at 689. Thus, as properly analyzed under the first thread of substantive due process, the Ordinance does not impermissibly limit the Koorns' substantive due process rights.

### 2. The Koorns do not allege that any specific non-legislative acts were improperly motivated by racial animus.

Under the second thread of substantive due process, arbitrary and improperly motivated non-legislative acts that directly infringe on a person's fundamental rights are unconstitutional. Nicholas, 227 F.3d at 139. As explained above, this analysis does not apply to the legislative act of the Ordinance's enactment. Other than that, the only non-legislative acts that the Koorns allege were improperly motivated by racial animus are the Mayor's and Committeeman's alleged racist remarks.[5] However, even if proven, these acts had no direct, legal effect on the Koorns' property rights. *See* Boyanowski, 215 F. 3d at 401 (slurs and innuendos made by government official did not directly infringe on plaintiff's property right). Certainly they had no legal effect on a requisite fundamental right.[6] Nicholas, 227 F.3d at 140.

---

[5]The Koorns appear to argue that enforcement actions under the Ordinance (which would qualify as non-legislative acts) were improperly motivated as well, but there is no evidence that any such enforcement occurred—especially in light of the negotiated stay of enforcement between the parties.

[6]While they correctly point out that ownership is a substantive property interest, DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 600 (3d Cir. 1995), the Koorns make

8

Furthermore, the Koorns do not allege any conduct so egregious that it "shocks the conscience."[7] Boyanowski, 215 F.3d at 401; *see also* Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617, 622–24 (1st Cir. 2000) (police officers' oral threats and repeated harassment (but not physically intrusive or violent conduct) that did not "strike at the basic fabric" of a protected relationship, such as the parent-child relationship, was not sufficiently egregious as to "shock the conscience"); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (allegation that sheriff laughed at and threatened to hang a prisoner did

---

no case that there is a fundamental property right to keep more than a certain number of dogs in or near a dwelling unit. Nor could they have, as we have previously noted: "[W]e have so far limited non-legislative substantive due process review to cases involving *real* property ownership." Nicholas, 227 F.3d at 141 (emphasis added). But regardless, the Ordinance forecloses neither the Koorns' real property ownership nor their ownership of dogs; it simply restricts them from keeping more than six in or near their dwelling.

[7]The Koorns cite Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir. 1988), in support of their argument that "improper motive" such as "personal interest or political partisanship" is sufficient to establish a substantive due process violation. Their reliance on Bello is misplaced for two reasons. First, as the Koorns would have discovered upon the most cursory of citation-checks, Bello has been effectively overruled:

> We hold that [County of Sacramento v.] Lewis [,523 U.S. 833 (1998) (requiring evidence of conduct "shocking to the conscience" in order to find violation of substantive due process)] has superceded [sic] prior decisions of our Court holding that a plaintiff asserting a municipal land-use decision violated substantive due process need only show that the municipal officers acted with an "improper motive." Thus, Bello v. Walker, 840 F.2d 1124 (3d Cir. 1988), and its progeny are no longer good law.

United Artists Theater Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 394 (3d Cir. 2003).

Second, as evident from the very language the Koorns chose to excerpt in their brief, Bello involved an improperly-motivated non-legislative act, the issuance of building permits, which is analyzed under a separate thread of substantive due process from the legislative act at issue here.

9

not state a constitutional claim under § 1983); Shabazz v. Cole, 69 F. Supp. 2d 177, 200 (D. Mass. 1999) ("Without even a suggestion of physical injury, [state prison librarian's] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct.").

For these reasons, the District Court correctly granted summary judgment to the Township dismissing the Koorns' substantive due process claims.

## B.    Procedural Due Process Claims

The Koorns assert that the Ordinance creates an "irrebutable presumption . . . that more than six dogs, kept 'in or about' a dwelling, creates a health hazard . . . irrespective of any other factors, without any procedure for the homeowner to prove otherwise. . . ." But their argument that the District Court should have recognized this as a valid procedural due process claim is unpersuasive.

The Fourteenth Amendment requires that the government employ appropriate procedural safeguards when depriving citizens of liberty or property interests recognized under the Constitution. *See, e.g.*, Mathews v. Eldridge, 424 U.S. 319, 332-333 (1976). The Koorns are correct that the statutes creating permanent irrebutable presumptions sometimes violate procedural due process. *E.g.*, Vlandis v. Kline, 412 U.S. 441 (1973) (state law providing that married students living in Connecticut who applied to the state university from outside Connecticut were irrebutably presumed to be out-of-state students violated procedural due process). But the Koorns are wrong to suggest that the Ordinance

10

creates a presumption that more than six dogs creates a health hazard. Even though the Ordinance is justified by a health and safety rationale, it applies to all dwellings at which more than six dogs are kept—not just those at which more than six dogs constitute a health hazard.[8] And, as discussed above, such narrow tailoring is not required. Stern v. Halligan, 158 F.3d 729, 734 (3d Cir. 1998) ("Mere over- or underinclusiveness will not invalidate social welfare regulation so long as the state action represents a rational response to a legitimate problem."). The Ordinance does not create an irrebutable presumption and it does not violate the Koorns' procedural due process rights.

## C.    Ex Post Facto Claim

The Koorns argue that the Ordinance violates the Constitution's Ex Post Facto Clause, Art. I, § 9 cl. 3, because it imposes restrictions on activity—the raising of dogs at their home—that was legal at the time they began it. "The ex post facto prohibition forbids Congress and the states to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." Weaver v. Graham, 450 U.S. 24, 28 (1981) (internal quotations omitted). Two critical elements exist for a criminal law to be ex post facto: "it must be

---

[8]Under the Koorns' rationale, any health- or safety-related regulation that imposed some restriction would create an irrebutable presumption that the restricted conduct is dangerous or unhealthy. Under this premise, the Koorns would, one conjectures, argue that the law requiring drivers to stop at stop signs violates their procedural due process rights by creating an "irrebutable presumption" that not stopping is hazardous, without giving the Koorns an opportunity to demonstrate, in a particular circumstance, that not stopping is safe.

11

retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." Id. at 29. The Ordinance is not retrospective. It does not impose any punishment for any conduct occurring before its enactment. Therefore, the District Court correctly denied the Koorns' Ex Post Facto Clause claim.

**D. Fair Housing Act and Other Civil Rights Claims**

The Koorns argue that the District Court erred in not recognizing their claims under any of the Fair Housing Act ("FHA"), 42 U.S.C. § 1981, and 42 U.S.C. § 1982. They "rely substantially upon the McDonnell Douglas presumption"[9] with respect to those claims. Because the Koorns do not make out cognizable claims under these statutory provisions and do not qualify for the McDonnell Douglas presumption, the District Court correctly granted the Township's summary judgment motion on those claims.

**1. Fair Housing Act, 42 U.S.C. §§ 3604(a), 3617**

Under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3604–31, it is unlawful for any person to refuse to sell or otherwise make unavailable a dwelling to any person on the basis of race. 42 U.S.C. § 3604(a). It is also unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of" that person's right to have a dwelling. Id. §§ 3617, 3604. "Dwelling" means a "building . . . designed for occupancy as a residence by one or more families." Id. § 3602(b).

---

[9]See discussion at subsection D.3 *infra*.

### a. Section 3604(a)

To make out a claim under § 3604(a), the Koorns must assert, first, that the Township denied or made housing unavailable to them and, second, that the Township's actions were based on the Koorns' race. Edwards v. Johnston County Health Dep't, 885 F.2d 1215, 1221 (4th Cir. 1989). The Koorns' FHA claim is deficient in that (1) Township did not "otherwise make unavailable" the Koorns' dwelling, and (2) the Township's actions were not made "on the basis of race."

### (i) "Otherwise make unavailable"

The Koorns claim that the actions of Township officials, "including without limitation the enactment of the Ordinance, were committed with the deliberate intent of harassing, intimidating, and coercing plaintiffs, and to deprive them of the use and enjoyment of their home, and for the purpose of creating such a hostile living environment that plaintiffs would decide to leave their home, and perhaps the Town." However, in limiting the number of dogs a person may keep at a dwelling, the Ordinance does not "make unavailable" the Koorns' right to have a dwelling in which to reside. As such, the enactment and enforcement of the Ordinance does not violate the FHA.

### (ii) "On the Basis of Race"

"A Title VIII claim must rest, in the first instance, upon a showing that the challenged action by a defendant had a racially discriminatory effect." Resident Advisory Bd. v. Rizzo, 564 F.2d 126, 148 (3d Cir. 1977). Discriminatory effect may be proved by

13

showing either "adverse impact to a particular minority group" or "harm to the community generally by the perpetuation of segregation." Huntington Branch, NAACP v. Town of Huntington, 844 F.2d 926, 937 (2d Cir.), aff'd in part, 488 U.S. 15 (1988). The Koorns make no showing that the Ordinance affects "a particular minority group." The Ordinance affects all Township citizens, white and minority alike. Nor is there any evidence that the Ordinance is likely to affect the Township's citizens along racial lines. As the District Court stated, "the fact that the first person an Ordinance affects is a person of color does not negate the fact that such Ordinance is a legitimate governmental exercise." Koorn v. Lacey Township, No. 01-79, at 4 (D.N.J. Dec. 23, 2002). As a result, the Koorns cannot sustain a claim under § 3604(a) of the Fair Housing Act.

### b.      Section 3617

The Fair Housing Act also makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of . . . any right granted or protected by" various sections of Title VIII, including Section 3604, which secures a person's right not to be denied a dwelling on the basis of race. 42 U.S.C. § 3617. As discussed above, the Township's enactment of the Ordinance limiting the number of dogs that a person may keep at a dwelling does not interfere with the Koorns' right to have a dwelling nor does it discriminate on the basis of race. For these same reasons, the Koorns do not successfully make out a claim under § 3617.

14

## 2. 42 U.S.C. §§ 1981 and 1982

The Koorns claim that the actions of the Township officials "denied them equal benefits of the law in the security of their persons and property, and to make and enforce contracts, under 42 U.S.C. 1981" and "their equal rights to own real property under 42 U.S.C. § 1982." They do not identify a distinct claim under either statute.

42 U.S.C. § 1981 provides: "All persons . . . shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens. . . ." 42 U.S.C. § 1982 mandates that "[a]ll citizens shall have the same right, in every State and Territory, as in enjoyed by white citizens thereof, to inherit, purchase, lease, sell, hold, and convey real and personal property."

The Ordinance limits the number of dogs that the Koorns can keep at any one dwelling. It does not foreclose them from owning any number of dogs or from owning any particular dwellings. For sure the Ordinance does not affect their right to "inherit, purchase, lease, sell, hold, or convey real or personal property." Nor does it infringe on the Koorns' right to make and enforce contracts. Furthermore, the Ordinance does not deny the Koorns any right that is "enjoyed by white citizens thereof." The Ordinance forecloses white citizens from keeping more than six dogs at a dwelling, just as it forecloses the Koorns. Thus the enactment of the Ordinance does not violate §§ 1981 or

15

1982.  Nor do the Koorns demonstrate how any other acts of the Township officials infringe on their §§ 1981 and 1982 rights.

### 3.     The <u>McDonnell Douglas</u> Presumption

The Koorns allege, with respect to their FHA, §§ 1981, 1982 claims, that they are entitled to the burden-shifting presumption of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  A plaintiff who establishes a *prima facie* case for discriminatory effect can shift the burden to defendants for justification of acts with discriminatory effects. <u>Resident Advisory Board</u>, 564 F.2d at 149.  A *prima facie* case consists of proof that (1) plaintiffs are in a protected class, (2) they applied for and were qualified to rent or purchase housing, (3) they were rejected, and (4) the housing opportunity remained available.  <u>Robinson v. 12 Lofts Realty, Inc.</u>, 610 F.2d 1032 (2d Cir. 1979).  While the Koorns establish that they are racial minorities and that they are qualified for the ownership of their home, they admit that the third and fourth elements have not been satisfied.  (J.A. at 348).  The Ordinance limiting the number of dogs they may keep does not reject them from their dwelling.  And even if it did, there is no way the Koorns could predict that their house would "remain available."  Accordingly, the Koorns cannot rely on the <u>McDonnell Douglas</u> presumption to establish a cause of action under the Fair Housing Act or 42 U.S.C. §§ 1981, 1982.

## E.     Conspiracy Claims

The Koorns allege that the Mayor, Committeemen, Township employees, Board of

16

Health, and the complaining neighbors "conspired, by agreement tacit or otherwise, to cause the Board of Health to enact the Ordinance" and argued that the District Court erred in not finding this to be a cognizable claim under 42 U.S.C. § 1985(3). We disagree.

In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997).

As noted already, the Ordinance is a legitimate social welfare legislation that is neutral on its face and applies to all Township residents. It does no injury to the Koorns or their property. As a result, the Koorns do not have a cognizable § 1985(3) claim as a matter of law. Thus the Koorns' claim that Township officials failed to halt a conspiracy in violation of 42 U.S.C. § 1986 must also fail. *See* Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993) ("[A] § 1986 claim must be predicated upon a valid § 1985 claim."); Grimes v. Smith, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985) ("[L]iability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986."). The District Court correctly dismissed the Koorns' conspiracy claims.

17

**F.    Pendant State Claims**

Finally, the Koorns argue that the District Court erred in not recognizing their various claims under state law.  However, because the Court properly dismissed the Koorns' federal claims, it properly refused to exercise jurisdiction over their pendant state claims.  28 U.S.C. § 1367(c)(3).

**III.**

**Conclusion**

For the foregoing reasons, we affirm the District Court's granting the Township summary judgment on the Koorns' claims.

_____

TO THE CLERK:

Please file the foregoing Opinion.

By the Court,

/s/ Thomas L. Ambro

Circuit Judge