

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-12-00357-CV

**TINA PATTERSON AND LARRY PATTERSON,**

                                 **Appellants**

 **v.**

**CITY OF BELLMEAD,**

                                 **Appellee**

_____

### From the 74th District Court
### McLennan County, Texas
### Trial Court No. 2011-1826-3

---

## MEMORANDUM OPINION

---

In this appeal, appellants, Tina and Larry Patterson, complain about a summary judgment granted in favor of appellee, the City of Bellmead (the "City"). In two issues, the Pattersons contend that: (1) the city ordinance involved in this case—Section 3-40 of the City's Municipal Code—is unconstitutional; and (2) the trial court abused its discretion in denying their motion to compel and granting the City's motion to quash. We affirm.

# I.     BACKGROUND

On March 15, 2011, the City gave the Pattersons notice that they were in violation

of Section 3-40 of the City's Municipal Code.   As noted by Victor Pena, the City's

manager, "Section 3-40 regulates the number of dogs and cats that could be kept on any

one premise within the City."   In fact, Section 3-40 provides that:

> The maximum number of dogs and cats which may be kept on any one
> premise shall be four (4).  Any person or persons who keeps more than a
> combined total of four (4) dogs or cats on any one premise shall be
> deemed to be maintaining a kennel and shall be assessed a kennel fee of
> three hundred dollars ($300.00) per year.

In their second amended petition for declaratory relief, the Pattersons asserted

that they "started a small hobby of training and handling show-quality dogs" beginning

in 1973.[1]   To prepare the dogs for various shows, the Pattersons admitted that they

"have often maintained multiple dogs and cats, as well as several other types of animals

on the Property."[2]   In any event, the Pattersons emphasized that they "have always

operated this endeavor as a hobby rather than a business in order to retain an amateur

status."

In an affidavit, Pena explained that he met with the Pattersons shortly after they

received the City's notice.  Pena recalled that he reviewed different options with the

Pattersons, including applying for and obtaining a permit.  If the Pattersons obtained a

---

[1] In their appellate brief, the Pattersons state that they began training and handling show-quality dogs in 1982, not 1973.

[2] In addition to the dogs on the 2.521-acre property, Tina Patterson acknowledged that when she moved on to the property in 1983, she brought "three horses, sixteen dogs[,] and two cats with her . . . . The number of horses later grew to 25."  In her affidavit, Tina stated that "the number of dogs varied over the coming years from 6 to 30."

permit, they would no longer be in violation of Section 3-40. The Pattersons "asked for a few days to become compliant with the ordinance," which Pena believed was acceptable. But rather than obtaining the permit or achieving compliance with Section 3-40, the Pattersons filed this action, seeking a declaration that Section 3-40 is unconstitutional.

During the discovery phase of this case, the Pattersons attempted to depose a City representative. The Pattersons also propounded interrogatories and requested certain documents from the City regarding, among other things, prior enforcement of Section 3-40. The City objected to the Pattersons' discovery requests and also filed a motion to quash the deposition of the City representative. The Pattersons responded to the City's objection by filing a motion to compel, which was later denied by the trial court. In addition, the trial court granted the City's motion to quash.

Thereafter, the City filed a traditional summary-judgment motion, arguing that Section 3-40 is constitutional because the ordinance is not arbitrary or unreasonable and it does not violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. *See* U.S. CONST. amend. XIV. The Pattersons filed a response to the City's summary-judgment motion, attaching the affidavits of Tina and Yvette Garza, the President of Lost Paws Rescue of Texas.

After a hearing on May 30, 2012, the trial court granted the City's summary-judgment motion. The trial court ordered that the Pattersons take nothing by their lawsuit. The Pattersons filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II. STANDARD OF REVIEW

The purpose of a declaratory-judgment action is to establish the existing rights, status, or other legal relationships between the parties. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b) (West 2008). Suits for declaratory judgment are intended to determine the rights of parties when a controversy has arisen, but before any wrong has been committed. *See Armstrong v. Hixon*, 206 S.W.3d 175, 179 (Tex. App.—Corpus Christi 2006, pet. denied); *Montemayor v. City of San Antonio Fire Dep't*, 985 S.W.2d 549, 551 (Tex. App.—San Antonio 1998, pet. denied).

Declaratory judgments are reviewed under the same standards as other judgments and decrees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2008); *Hawkins v. El Paso First Health Plans, Inc.*, 214 S.W.3d 709, 719 (Tex. App.—Austin 2007, pet. denied). We look to the procedure used to resolve the issue at trial to determine the standard of review on appeal. *See Hawkins*, 214 S.W.3d at 719; *Armstrong*, 206 S.W.3d at 179; *see also City of Galveston v. Tex. Gen. Land Office*, 196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Because the trial court determined the declaratory judgment through summary judgment proceedings, we review the propriety of the trial court's declarations under the same standards that we apply to summary judgments. *See City of Galveston*, 196 S.W.3d at 221; *City of Austin v. Garza*, 124 S.W.3d 867, 871 (Tex. App.—Austin 2003, no pet.); *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The function of a summary judgment is to eliminate patently unmeritorious claims and untenable defenses, not to deprive litigants of the right to a trial by jury. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We review a trial court's decision to grant or deny a summary judgment de novo. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Dorsett*, 164 S.W.3d at 661.

### III.    THE MOTIONS TO COMPEL AND QUASH

In their second issue, the Pattersons argue that the trial court abused its discretion by denying their motion to compel and granting the City's motion to quash. Specifically, the Pattersons allege that the trial court's rulings ostensibly prohibited them from engaging in the discovery process, which restricted their ability to meet their burden of proving that Section 3-40 is unconstitutional.

### A.    Applicable Law

We review a trial court's actions denying discovery for an abuse of discretion. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.*

The Texas Supreme Court has stated that "'the ultimate purpose of discovery is to seek the truth, so that disputes may be decided by what the facts reveal, not by what facts are concealed.'" *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (quoting *Jampole v. Touchy*, 673 S.W.2d 569, 573 (Tex. 1984) (orig. proceeding)); *see In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding). Our procedural rules define the scope of discovery to include any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam); *see Eli Lilly & Co. v. Marshall*, 850 S.W.2d 155, 160 (Tex. 1993). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. TEX. R. EVID. 401. The phrase "relevant to the subject matter" is to be "'liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial.'" *Castillo*, 279 S.W.3d at 664 (quoting *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990)).

Although the scope of discovery is broad, discovery requests must nevertheless show a "reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.*, 124 S.W.3d at 152; *see In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding). Thus, discovery requests must be "reasonably tailored" to include only relevant matters. *In re CSX Corp.*, 124 S.W.3d at 152; *see In re Am. Optical Corp.*, 988 S.W.2d at 713. Therefore, the preemptive denial of discovery is

proper if there exists no possible relevant, discoverable testimony, facts, or material which would support or lead to evidence that would support a claim or defense. *Castillo*, 279 S.W.3d at 664. The scope of discovery is also limited by the legitimate interests of the opposing party to avoid overly broad requests, harassment, or disclosure of privileged information. *McIlhany*, 798 S.W.2d at 553.

The party objecting to discovery bears the burden to present any and all evidence necessary to support its objections. *See* TEX. R. CIV. P. 193.4(a), 199.6; *In re CSX Corp.*, 124 S.W.3d 151; *see also In re Am. Power Conversion Corp.*, No. 04-12-00140-CV, 2012 Tex. App. LEXIS 9369, at *10 (Tex. App.—San Antonio Nov. 14, 2012, orig. proceeding) (mem. op.).

## B.     Discussion

In the present case, the Pattersons sought information from the City regarding, among other things,

1. Each and every governmental interest to which the City claims Section 3-40 is related. Also, the Pattersons requested that the City detail how it contends Section 3-40 meets, satisfies, relates, or has any connection to the particular governmental interest. In doing so, the Pattersons also requested that the City state and describe upon what information, study, empirical data, or other evidence upon which these contentions are based.

2. The number and/or identity of the individual(s) and/or entity(ies) that the City has charged with a violation of Section 3-40 of the Municipal Code of the City of Bellmead from the time of the provisions' enactment until present[3]

---

[3] At least two Ohio courts have stated that:

> The conscious exercise of some selectivity in enforcement is not, in itself, a violation of the United States Constitution. In order for selective enforcement to reach the level of unconstitutional discrimination, the discriminations must be "intentional or purposeful." To prove selective prosecution, a claimant bears the heavy burden of establishing, at least prima facie: (1) that, while others similarly situated have not

In any event, a review of the Pattersons' pleadings shows that they assert a facial challenge to Section 3-40, advancing both substantive due process and equal protection violations. In this appeal, we must determine whether the challenged provision of the ordinance goes beyond the legitimate bounds of the City to enact it. It is axiomatic that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1955). Further, courts have noted that:

> "while this standard is often difficult for the movant to meet—given the complexities of constitutional litigation—it is not insuperable . . . . If a complaint alleges that a state regulation, on its face, is inconsistent with a specific provision of the United States Constitution, that complaint will be dismissed where a thoughtful reading of the regulation convinces the district court that the regulation is plainly within the bounds of the Constitution."

*Chicago Bd. of Realtors v. Chicago*, 673 F. Supp. 224, 228 (N.D. Ill. 1986), *aff'd*, 819 F. 2d 732 (7th Cir. 1987) (quoting *Gaines v. Lane*, 790 F.2d 1299, 1303 (7th Cir. 1986)). The *Chicago Board of Realtors* Court further explained:

---

generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. The burden on a person claiming selective enforcement to show intentional or purposeful discrimination is a heavy one, and will not be presumed.

*Zageris v. Whitehall*, 594 N.E.2d 129, 135 (Ohio Ct. App. 1991) (citing *State v. Flynt*, 407 N.E.2d 15, 15, 17-18 (Ohio 1980)) (emphasis added). Here, the Pattersons neither pleaded nor proved invidious discrimination or selective prosecution based on bad faith; therefore, we fail to see how information regarding the City's prior enforcement of Section 3-40 is relevant in this matter.

> The reason for this rule is apparent; a facial challenge to the constitutionality of legislative action may depend solely upon a reading of the challenged provision and whether it meets the test appropriate to the specific constitutional provision under which it is challenged. This sort of facial challenge admits of no room for proof of any facts in support of the challenge. Such questions are pure questions of law, and as was held in *Gaines* may be answered on the pleadings.

*Id.*

As noted above, the Pattersons assert a facial challenge to the constitutionality of Section 3-40—a challenge that is a pure question of law and does not permit the introduction of facts to support the Pattersons' assertions. *Id.*; *see Gaines*, 790 F.2d at 1303. In addition, as we conclude below, reasonable minds may differ as to whether Section 3-40 has a substantial relationship to public health, safety, morals, or general welfare; thus, the ordinance must stand as a valid exercise of the City's police power and the Pattersons' discovery requests are irrelevant to this matter. *See Quick v. City of Austin*, 7 S.W.3d 109, 117 (Tex. 1998) ("The party attacking the ordinance bears the 'extraordinary burden' to establish 'that no conclusive or even controversial or issuable fact or condition existed' that would authorize the passage of the ordinance. We consider all the circumstances and determine, as a substantive matter, if reasonable minds could differ as to whether the ordinance has a substantial relationship to the protection of the general health, safety, or welfare of the public. If the evidence reveals a fact issue in this respect, the ordinance must be upheld." (internal citations omitted)); *see also Gaines*, 790 F.2d at 1304 ("In short, a regulation which generally advances a legitimate governmental interest of sufficient importance is not invalid simply because

the government does not demonstrate that each and every application of that regulation necessarily furthers that interest.").

Furthermore, to the extent that the Pattersons sought a declaration of unconstitutionality under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, we note that the Pattersons' equal-protection argument focuses on a comparison of Section 3-40's treatment of dog and cat owners with owners of other animals. In particular, the Pattersons argue that Section 3-40 unfairly restricts dog and cat ownership but does not impose ownership limitations for other animals. Clearly, the Pattersons' equal-protection argument does not involve a charge of invidious discrimination based on immutable characteristics, such as race or sex. *See* U.S. CONST. amend. XIV; *Hatten v. Rains*, 854 F.2d 687, 690 (5th Cir. 1988); *see also Employers Ins. of Wausau v. Horton*, 797 S.W.2d 677, 681 (Tex. App.—Texarkana 1990, no writ) ("In general, the guarantee of equal protection is not a source of substantive rights or liberties but a right to be free from invidious discrimination in statutory classifications."). And the record does not suggest that the discovery sought by the Pattersons likely will lead to evidence of invidious discrimination addressed by the Equal Protection Clause.

Accordingly, we cannot say that the Pattersons have adequately demonstrated that the trial court abused its discretion in limiting discovery in this matter. *See Castillo*, 279 S.W.3d at 661. We overrule the Pattersons' second issue.

## IV. CONSTITUTIONALITY OF SECTION 3-40

In their first issue, the Pattersons contend that Section 3-40 is unconstitutional because the ordinance does not have a rational relationship to any governmental function. The Pattersons also assert that the ordinance violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution because it treats dog and cat owners differently than others who are similarly situated.

### A. Applicable Law

A municipal ordinance is presumed to be valid, and the burden of showing its invalidity rests on the party attacking it. *See Safe Water Found. of Tex. v. City of Houston*, 661 S.W.2d 190, 192 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *City of Waxahachie v. Watkins*, 154 Tex. 206, 212, 275 S.W.2d 477, 480 (1955) ("Since it is an exercise of the legislative power of the City's Council, the ordinance must be presumed to be valid."); *see also Esponceda v. City of San Antonio*, No. 04-02-00561-CV, 2003 Tex. App. LEXIS 4334, at *3 (Tex. App.—San Antonio May 22, 2003, pet. denied) (mem. op.). If reasonable minds may differ as to whether a particular ordinance has a substantial relationship to the public health, safety, morals, or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the City's police power. *Quick*, 7 S.W.3d at 117. When suit is filed attacking an ordinance passed under a municipality's police powers, "the party attacking the ordinance bears an 'extraordinary burden' to show 'that no conclusive or even controversial or issuable fact or condition existed' which would authorize the municipality's passage of the ordinance." *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 792-93 (Tex. 1982) (citing

*Thompson v. City of Palestine*, 510 S.W.2d 579, 581 (Tex. 1974)).  The question of whether one challenging an ordinance can meet this burden of proof is a question of law properly answered in summary-judgment proceedings.  *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971).

If possible, we must interpret a statute in a manner that renders it constitutional.[4] *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 873 (Tex. 2000); *Quick*, 7 S.W.3d at 115 ("In analyzing the constitutionality of a statute, we should, if possible, interpret the statute in a manner that avoids constitutional infirmity.").  Under section 54.001(a) of the Texas Local Government Code, the governing body of a municipality may use its police power to enforce any ordinance of the municipality.  TEX. LOC. GOV'T CODE ANN. § 54.001(a) (West 2008).  However, the exercise of police power by a City must accord with substantive due process principles—that is, it cannot be arbitrary and

---

[4] In determining the constitutionality of a statute or ordinance, criminal case law is substantially similar to its civil counterpart.  In particular, in *Skillern v. State*, the Austin Court of Appeals noted the following:

> In determining a statute's constitutionality, we must begin with a presumption of the statute's validity.  *Faulk v. State*, 608 S.W.2d 625, 630 (Tex. Crim. App. 1980); *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. 1979); *Wilson* [*v. State*], 825 S.W.2d [155] at 158 [(Tex. App.—Dallas 1992, pet. ref'd)].  We presume that the legislature did not act unreasonably or arbitrarily in enacting the statute and that it had due regard for constitutional requirements.  *Ex parte Granviel*, 561 S.W.2d 503, 511 (Tex. Crim. App. 1978); *Mohammad v. State*, 814 S.W.2d 137, 140 (Tex. App.—Houston [14th Dist.] 1991), *aff'd*, 830 S.W.2d 953 (Tex. Crim. App. 1992).  It is appellant's burden to show that the statute is unconstitutional.  *Granviel*, 561 S.W.2d at 511; *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974).  Every reasonable intendment and presumption is made in favor of the constitutionality and validity of the statute until the contrary is clearly shown.  Before a legislative act will be set aside, it must clearly appear that its validity cannot be supported by any reasonable intendment or allowable presumption.  *Granviel*, 561 S.W.2d at 511.  Constitutional issues will not be decided upon a broader basis than the record requires.  *State v. Garcia*, 823 S.W.2d 793 (Tex. App.—San Antonio 1992, pet. ref'd).

890 S.W.2d 849, 860 (Tex. App.—Austin 1994, no pet.).

unreasonable. *See City of San Antonio v. TPLP Office Park Props.*, 218 S.W.3d 60, 65 (Tex. 2007) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 938 (Tex. 1998)).

The United States Supreme Court has stated that a City's action with regard to property regulation will survive a substantive due process challenge if it could have rationally been decided that the measure might achieve the objective. *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 835 n.3, 107 S. Ct. 3141, 3147-48, 97 L. Ed. 2d 677 (1987). The City argues that the proper standard in this case is federal "rational basis" review—the standard that applies to federal due process challenges. *See Garcia*, 893 S.W.2d at 525; *see also TPLP Office Park Props.*, 218 S.W.3d at 65-66 (applying "rational basis" review to a substantive due process challenge to city action and ordinance). "Under federal due process, a law that does not affect fundamental rights or interests . . . is valid if it merely bears a rational relationship to a legitimate state interest." *Garcia*, 893 S.W.2d at 525 (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 491, 75 S. Ct. 461, 466, 99 L. Ed. 563 (1955)). Or, in other words, "[u]nder the rational relationship standard, the City's decisions must be upheld if evidence in the record shows it to be at least fairly debatable that the decisions were rationally related to a legitimate governmental interest." *TPLP Office Park Props.*, 218 S.W.3d at 65 (citing *Mayhew*, 964 S.W.2d at 938).

In the context of determining whether a statute or ordinance is a proper exercise of police power, Texas courts have stated the test as whether "the statute in question bears a real and substantial relation to the public health, safety, morals, or general welfare of the public." *Satterfield v. Crown Cork & Seal Co.*, 268 S.W.3d 190, 216 (Tex. App.—Austin 2008, no pet.); *see Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 615

(Tex. App.—Texarkana 2008, no pet.) (citing *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 805 (Tex. 1984); *Hunt*, 462 S.W.2d at 539); *see also Grothues v. City of Helotes*, 928 S.W.2d 725, 729 n.6 (Tex. App.—San Antonio 1996, no writ) (noting that the police power is a grant of authority from the people to their government agents for the protection of the health, safety, comfort, and welfare of the public).  A statute is a proper exercise of police power if it is "appropriate and reasonably necessary to accomplish a purpose within the scope of the police power" and it is "reasonable and not arbitrary or unjust in the manner it seeks to accomplish the goal of the statute or so unduly harsh that it is out of proportion to the end sought to be accomplished." *Satterfield*, 268 S.W.3d at 215 (citation omitted).

The trial court resolves disputed fact issues, but the ultimate question of whether an action or ordinance regulating property violates due process is a question of law. *TPLP Office Park Props.*, 218 S.W.3d at 65 (citing *Mayhew*, 964 S.W.2d at 932).

## B.  Discussion

In its traditional motion for summary judgment, the City asserted that Section 3-40 is constitutional because it "is rationally related to a legitimate government interest in the safety, welfare and general enjoyment of both animals and citizens of the City of Bellmead."  In addition, the City cited numerous cases from around the country holding that ordinances, including those regulating the ownership, possession, and control of dogs, are a proper exercise of a municipality's police power if they are designed to secure the safety, health, and welfare of the public.  *See Ex parte Naylor*, 248 S.W.2d 607, 611 (Tex. Crim. App. 1952) ("It is the policy of the courts to uphold regulations intended

to protect the public health, unless it is plain that they have no real relation to the object for which ostensibly they were enacted, and prima facie they are reasonable."); *Leibowtiz v. City of Mineola*, 660 F. Supp. 2d 775, 783-84 (E. D. Tex. 2009) (noting that dogs are recognized as property in Texas and that "[o]rdinances, including those regulating the ownership, possession, and control of dogs, are a proper exercise of a municipality's police power if they are designed to secure the safety, health and welfare of the public") (citing *Vargas v. City of San Antonio*, 650 S.W.2d 177, 179 (Tex. App.—San Antonio 1983, writ dism'd w.o.j.); *Hargrove v. City of Rotan*, 553 S.W.2d 246, 247 (Tex. Civ. App.—Eastland 1977, no writ)); *see also Sentell v. New Orleans & Carrollton R.R. Co.*, 166 U.S. 689, 704, 17 S. Ct. 693, 695-96, 41 L. Ed. 1169 (1897) ("Even if it were assumed that dogs are property in the fullest sense of the word, they would still be subject to the police power of the State and might be destroyed or otherwise dealt with, as in the judgment of the legislature is necessary for the protection of its citizens. That a State, in a bona fide exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be, which has for its objects the welfare and comfort of the citizen."); *Koorn v. Lacey Twp.*, 78 Fed. Appx. 199, 202-03 (3d Cir. 2003)[5]; *Zageris v. City of Whitehall*, 594 N.E.2d 129, 134-35 (Ohio Ct. App. 1991)

---

[5] In *Koorn v. Lacey Township*, the Third Circuit Court of Appeals noted that:

> There is no fundamental right to keep more than a certain number of dogs in a dwelling unit, so the District Court properly applied rational-basis scrutiny to evaluate the Ordinance's constitutionality. Thus, to satisfy the rational-basis test, the Ordinance need only be rationally related to any legitimate government purpose. The Ordinance need not be narrowly tailored to achieving that legitimate end.
>
> . . . .

(upholding, as constitutional, a city ordinance limiting the number of dogs allowed to be kept in a single family dwelling).[6]

In response to the City's assertions and case law, the Pattersons relied heavily on Tina and Garza's affidavits. Garza, who has experience "dealing with the City of Carrollton, Texas regarding its pet limit law" and who has worked for sixteen years for animal-rescue organizations, stated that Section 3-40 is not rationally related to a legitimate governmental interest. Garza further opined that issues concerning hoarding, noise and odor complaints, injury to humans or property by animals, and abuse of animals are unrelated to pet-limit laws. Instead, pet-limit laws lead to increased costs to the municipality, decreased animal adoptions, and increased animal deaths in municipal shelters, according to Garza.

---

> Protecting residents' health and safety is a legitimate interest of municipal government. Large concentrations of dogs can be dangerous and unsanitary. As a result, a municipality may rationally conclude that limiting the number of dogs in any given dwelling will protect the health and safety of its residents. The Township does not need to prove that the number of dogs they chose to allow was any more or less rational than any other number, distinguish between large and small dogs, address other pets such as cats, or impose sanitation standards, as the Koorns allege.

78 Fed. Appx. 199, 202-03 (3d Cir. 2003); *see Stern v. Halligan*, 158 F.3d 729, 731 (3d Cir. 1998) ("Protecting the health, safety, and general welfare of township inhabitants . . . is plainly in the public interest.").

[6] In *Zageris*, the Ohio Court of Appeals stated that:

> In order to overcome the presumption of validity that the Whitehall ordinance enjoys, and in order to prove that it is unreasonable and arbitrary, the contesting party must demonstrate a clear and palpable abuse of the legislating body's police power. When dealing with municipal ordinances, the municipalities are presumed to be familiar with local conditions and know the needs of the community, and, therefore, a court will not substitute its judgment for legislative discretion absent a clear and palpable abuse of power.

594 N.E.2d at 134.

On the other hand, Tina detailed her ownership and use of the property and described how Section 3-40 impaired her use of the property. Tina also noted that she has had numerous interactions with City Animal Control Officers and that one officer stated that: "The dogs were beautiful" and "The animals looked to be in great condition." Tina also averred that no one has ever complained about the number of animals staying on the property and that she is not aware of anyone being accused by the City of violating Section 3-40.

Nevertheless, after reviewing Section 3-40 and the record in this case, we believe that the ordinance arises out of the City's police power because it was designed to secure the safety, health, and welfare of the public. *See Whitfield v. City of Paris*, 84 Tex. 431, 432-33, 19 S.W. 566, 567 (1892) (concluding that an ordinance providing for the destruction of dogs was a proper exercise of the police power of the municipality because it was designed to secure the safety, health, and welfare of the public); *Beville v. City of Longview*, 131 S.W.2d 313, 314 (Tex. Civ. App.—Texarkana 1939, writ dism'd) (considering an ordinance designed to restrain and prohibit mules and other livestock from roaming at large within city limits and noting that this ordinance was a valid exercise of the city's police power, enacted in the interest and welfare of the public at large); *Smith v. Arnold*, 251 S.W. 315, 315-16 (Tex. Civ. App.—Beaumont 1923, no writ) (considering the liability of a municipality for the negligence of its poundmasters in carrying out a municipal ordinance regulating, restraining, and prohibiting certain animals from running at large and impounding them and noting that "[s]uch ordinances arise out of the police power conferred upon cities and towns and are

enacted for the public good"); *see also Koorn*, 78 Fed. Appx. at 202-03; *Stern v. Halligan*, 158 F.3d 729, 731 (3d Cir. 1998). In fact, we agree with the conclusion made in *Koorn* that: "Protecting residents' health and safety is a legitimate interest of municipal government. Large concentrations of dogs can be dangerous and unsanitary. As a result, a municipality may rationally conclude that limiting the number of dogs in any given dwelling will protect the health and safety of its residents." 78 Fed. Appx. at 203.

Furthermore, the Pattersons' reliance on the affidavits of Tina and Garza demonstrates that reasonable minds may differ as to whether Section 3-40 has a substantial relationship to public health, safety, morals, or general welfare. *See Quick*, 7 S.W.3d at 117; *see also Gaines*, 790 F.2d at 1304. Therefore, based on the foregoing, the ordinance does not violate substantive due process and, thus, must stand as a valid exercise of the City's police power. *See TPLP Office Park Props.*, 218 S.W.3d at 65; *Mayhew*, 964 S.W.2d at 938; *Satterfield*, 268 S.W.3d at 215.

The Pattersons also argue that Section 3-40 violates the Equal Protection Clause and that the City is estopped from employing the presumption of constitutionality. The Equal Protection Clause of the Fourteenth Amendment, as applied to the states, guards against invidious discrimination. *See* U.S. CONST. amend. XIV; *see also Hatten*, 854 F.2d at 690. This amendment invalidates classifications that disadvantage a particular group or deprive a certain class of people their fundamental rights. *Hatten*, 854 F.2d at 690. "Classifications which impermissibly interfere with the exercise of a fundamental right or operate to the peculiar advantage of a suspect class are subjected to strict judicial scrutiny, meaning that they must constitute the least restrictive means to achieve a

compelling state interest." *Id.* (citing *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312, 96 S. Ct. 2562, 2566, 49 L .Ed. 2d 520 (1976)). Classifications that disadvantage a quasi-suspect class are subject to intermediate scrutiny, and "must bear a significant relationship to an important state end." *Id.* All other classifications must only bear a rational relationship to a legitimate legislative end. *Id.*

The Pattersons have provided no support for the proposition that dog and cat ownership is a fundamental right or that as dog and cat owners, they are part of a suspect or quasi-suspect class subjected to invidious discrimination. In fact, the *Koorn* Court noted that "[t]here is no fundamental right to keep more than a certain number of dogs in a dwelling unit." 78 Fed. Appx. at 202. Therefore, we must apply the rational basis test to evaluate the Pattersons' equal-protection claim. *Id.* And because we have concluded that Section 3-40 is rationally related to a legitimate governmental interest, protecting the health and safety of the City's residents, we therefore reject the Pattersons' equal protection claim.

With respect to the Pattersons' estoppel contention, we note that the City exercised its governmental powers when enacting Section 3-40. *See* TEX. LOC. GOV'T CODE ANN. § 54.001(a). Moreover, Texas courts have held that estoppel does not apply against a governmental unit exercising its governmental functions. *See City of Hutchins v. Prasifka*, 450 S.W.2d 829, 835 (Tex. 1970); *Clear Lake City Water Auth. v. Winograd*, 695 S.W.2d 632, 640 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Capitol Rod & Gun Club v. Lower Colorado River Auth.*, 622 S.W.2d 887, 896 (Tex. App.—Austin 1981, writ ref'd n.r.e.). As such, we also reject the Pattersons' estoppel argument.

Because we have concluded that Section 3-40 of the City's Municipal Code is constitutional, we cannot say that the trial court erred in granting the City's traditional motion for summary judgment. *See Tex. Mun. Power Agency*, 253 S.W.3d at 192; *see also Dorsett*, 164 S.W.3d at 661. Accordingly, we overrule the Pattersons' first issue.

## V. CONCLUSION

Having overruled both of the Pattersons' issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice


Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed March 21, 2013
[CV06]